COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Norfolk, ss.

Superior Court Department
Civil Action No.

DONNA GAVIN,                        )
Plaintiff                           )
                                    )
v.                                  )
                                    )
BOSTON POLICE DEPARTMENT AND        )
MARK HAYES                          )
Defendants                          )
                                    )

18    0348

## I. Nature of the Action

1.      Plaintiff, Donna Gavin ("Gavin"), brings this action against the Boston Police

        Department ("BPD") and Mark Hayes ("Hayes") for gender discrimination, hostile work

        environment based on gender, retaliation, aiding and abetting in discriminatory practices,

        and coercion, intimidation, threats and interfering with the right to be free from

        discrimination in violation of Massachusetts General Laws, Chapter 151B, Sections 4 (1),

        4 (4), 4(4A) and 4 (5).  Additionally, Gavin brings this action against the BPD and Hayes

        for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act

        of 1964, 42 U.S.C. §§ 2000e *et seq.*

## II. The Parties

2.      Plaintiff, Donna Gavin, is a natural person residing at: 88 Wharf Street, Milton, Norfolk

        County, Massachusetts.

3.      Defendant, Boston Police Department, is a political subdivision of the City of Boston

        located at One Schroeder Plaza, Boston, Suffolk County, Massachusetts.

1

4.      Defendant, Mark Hayes, is an individual located at One Schroeder Plaza, Boston, Suffolk County, Massachusetts.


### III.      Venue

5.      Venue is proper as Plaintiff resides in Milton, Norfolk County, Massachusetts.

### IV.  The Facts

6.      The BPD is an employer as defined under G.L. c.151B, § 1 (5).  BPD is a paramilitary organization with a well-defined command structure.

7.      At all times relevant, Gavin was the **only** female Lieutenant Detective employed by the BPD, and the highest ranking female civil servant at the BPD.

8.      Gavin has been an employee of BPD for approximately thirty-two (32) years and has always performed her job in a satisfactory manner earning commendations, regular pay increases, and numerous awards.  After Gavin tied for second place on the Lieutenant's exam, Gavin was promoted to temporary Lieutenant in April 2015 until July 2015 and again in October 2015 until March 2016.  In March of 2016 Gavin was promoted to permanent Lieutenant.  On or about October 15, 2016, Gavin was promoted to Lieutenant Detective.

9.      On May 11, 2016, Hayes sent Gavin an email alerting her that "City Hall" and the BPD were creating a new position, Lieutenant Detective, for the Commander of the Human Trafficking Unit ("HTU") and the Crimes Against Children Unit ("CACU").

10.     On May 13, 2016, Gavin was transferred, and assumed command of both the HTU and CACU of the BPD.   Additionally, Gavin was assigned as the City of Boston's City Empowered Against Sexual Exploitation ("CEASE") co-coordinator.  Gavin's direct supervisor, at all relevant times was Captain Detective Hayes.  Hayes was Gavin's direct supervisor from 2010 until her promotion to temporary Lieutenant in 2015.

11.   Gavin interpreted Hayes' May 11, 2016 email as an attempt by Hayes to delegitimize her position and rank as the email was cc'd to two (2) of her subordinate Sergeants and an IT technician.

12.   Two (2) other male Lieutenant Detectives, one of whom is Hayes' brother-in-law, were supervised by Hayes in addition to Gavin.

13.   The HTU and CACU are housed at the Family Justice Center ("FJC") with the Suffolk County District Attorney's Children's Advocacy Center ("CAC") and other service providers who work with abused, neglected and sexually exploited children and adults. Gavin was led to believe that she was being transferred to the FJC because of her expertise in sex trafficking investigation, to lead Boston's CEASE initiative, and to oversee the CACU and HTU. The CACU was staffed with two veteran sergeant detectives, one of which had been overseeing the HTU prior to Gavin's transfer. Gavin, Hayes and the two (2) other male Lieutenant Detectives all worked at the FJC.

14.   Upon her arrival Gavin was given a small cubicle at the FJC with no privacy to conduct her work. Gavin's cubicle was actually smaller than the Sergeants that she supervised.

15.   The other two male Lieutenant Detectives had large private offices.

16.   When Gavin assumed command of HTU/CACU in May 2016, unlike other similarly situated male unit commanders at the FJC, Gavin had little to no input or influence over personnel decisions involving the transfer of detectives and sergeants in and/or out of the units she supervised.

17.   On or about May 19, 2016, Gavin was informed that Detective Jerrod Gero ("Gero") was being assigned to HTU and he arrived the next day. Normally, the commander of a unit has advanced notice and some input in the selection of his/her detectives.

18.     In June of 2016, Hayes conducted a case review of the CACU with Gavin.  Gavin did
        not think this review was outside the norm as she had just assumed command of the
        CACU.

19.     In August of 2016, Hayes sent an email concerning the building of an interview room
        at the FJC, but there was no mention of a private office for Gavin.

20.     In late May of 2016, after being told the HTU staff was being increased, Gavin told
        Hayes she wanted more diversity in the unit. On or about September 2, 2016, after
        being asked to recruit a detective for the CACU, Gavin sought to have an African-
        American detective transferred to the unit.   Hayes stated in an email that that transfer
        was not going to occur.

21.     The reason that Hayes gave Gavin that the transfer was not going to occur was
        because Sergeant Brian Miller ("Miller") vetoed the transfer.  Miller was one of
        Gavin's direct subordinates.

22.     Upon information and belief, Hayes does not allow subordinates of the two (2) male
        Lieutenant Detectives to veto personnel transfers.

23.     On September 30, 2016, Gavin was summoned to a meeting with Hayes and Deputy
        Superintendent Norma Ayala ("Ayala").  Hayes and Ayala notified Gavin that they
        were transferring out of HTU two (2) experienced and dedicated detectives (both
        female), and were transferring into the HTU two (2) African-American female
        detectives.  These transfers were to occur in November 2016.

24.     Gavin welcomed the two (2) new detectives; however, protested the transfer out of
        the HTU of two (2) veteran female detectives.  Gavin questioned why they were
        being transferred out of HTU instead of Gero (the two female detectives both had
        more seniority than Gero, both in the unit and as detectives).  Additionally, one of the
        detectives had been awarded detective of the year by her peers and the other was an
        openly gay female.  Gavin informed Hayes and Ayala that Gero, although a good

investigator, lacked the proper victim centered skills to interact with victims of human trafficking in order to persuade them to cooperate in sex trafficking prosecutions.  Additionally, Gavin had also received complaints about Gero from victim service providers at the FJC, including a survivor who reported that Gero was disrespectful to her during a presentation she was giving.   Gavin's concerns about the personnel transfers were ignored.  Hayes claimed that these transfers were due to Gavin's request for "diversity" in the HTU.

25.  In October 2016, Hayes conducted a second case review of the CACU.  Upon information and belief, Hayes did not conduct case reviews of the male Lieutenant Detectives' respective units.

26.  On November 5, 2016, Hayes sent Gavin an email concerning the transfer of the two (2) HTU female detectives.  Hayes threatened Gavin to not contact Mayor Walsh about the impending transfers.  Hayes cc'd Gavin's subordinates on the email.

27.  Gavin believed that Hayes' threat was an attempt to undermine her authority with her subordinates, delegitimize her position and rank, and humiliate and embarrass her. Upon information and belief Hayes does not treat Gavin's male counterparts in such a condescending and unprofessional manner.

28.  On December 21, 2016, Hayes sent Gavin an email concerning a pending case. Hayes cc'd multiple subordinates and outside agencies.  In the email Hayes criticized Gavin's work performance and decision making on the pending case.  Upon information and belief, Hayes did not treat Gavin's male counterparts in the same fashion when addressing alleged performance issues.  Hayes' deliberately eschewed the facts of the pending case in order to diminish Gavin's reputation with outside agencies and subordinates.

29.  Additionally, Hayes repeatedly allowed Gavin's subordinates to circumvent the chain of command and report directly to him despite Gavin's protests to the contrary.

30.     Hayes also countermanded Gavin's orders without justification on repeated occasions and cc'd subordinates and outside agencies concerning it.

31.     On January 13, 2017, Gavin wrote a report to Hayes concerning Gero.  In the report, Gavin was critical of Gero's conduct during an investigation and suggested that he receive additional training.

32.     Hayes then started an "investigation" into her report on Gero in which he conducted interviews and contacted outside agencies.  Hayes' impromptu investigation and behavior was outside of normal procedures and/or practices.

33.     On or about January 17, 2017, facility maintenance personnel brought an architect to the FJC regarding building an interview room and Gavin's office space.  The architect asked Gavin who she was.  After Gavin explained that she was a Lieutenant Detective the architect asked where the other Lieutenant Detectives' offices were located.

34.     The architect then told Gavin that her private office could be located near the other Lieutenant Detectives' offices.  The architect stated that he and facility maintenance personnel would review the buildings' blue prints in order to create Gavin's office.

35.     On January 26, 2017, Hayes stated in an email, that Gavin was cc'd on, that her office was "cost prohibitive."

36.     At some point prior to March 2017, Gavin contacted her union and complained that she was being treated differently than her male counterparts with respect to her lack of a private office.  Upon information and belief the union contacted the BPD and relayed her concerns regarding her lack of a private office.

37.     On March 4, 2017, a sergeant was transferred into the HTU, per Hayes' request, without Gavin's input or knowledge.  Hayes contacted Gavin to let her know.  During the conversation, Gavin asked Hayes about the status of her private office.  Hayes told her that she was not getting a private office.

38.     During the conversation on March 4, 2017, Gavin told Hayes that she felt as though she was being discriminated against by the BPD because she was not receiving a private office like her male counterparts.  Hayes then stated that Gavin's job was "created" and it did not come with an office.  At no time did Hayes report Gavin's March 4, 2017, complaint of discrimination to anyone within the BPD.

39.     Gavin then contacted her union and complained that she was not getting a private office.  Gavin also contacted BPD headquarters and complained.

40.     As a result of Gavin's complaint, facility maintenance returned to the FJC on March 6, 2017.

41.     Hayes' supervisor, Ayala and facility maintenance notified Gavin that they determined that her office would be located opposite from the other Lieutenant Detectives' offices, in a back hallway overlooking a dumpster and alley.  Gavin found this to be demeaning and humiliating.

42.     On March 7, 2017, Gavin called facility maintenance and stated that she could not agree to the space that they picked out as it was isolated and not comparable to the offices of her male counterparts (especially since there was available space at the front of the building and next to the other male lieutenant detectives).  Facility maintenance agreed to return to the FJC.

43.     On March 21, 2017, Hayes conducted a case review of the HTU for cases in 2015, 2016 and up to March 2017.   At no time during the case review did Hayes raise any concerns regarding record keeping. On March 22, 2017, Hayes emailed Gavin agreeing that the case review went well.

44.     On March 27, Gavin contacted her union concerning the private office.  Upon information and belief the union contacted both Hayes and the BPD administration concerning Gavin receiving a private office.

45.   On or about March 30, 2017, Hayes sent Gavin an email concerning detectives under her command (and again cc'd subordinates).

46.   On April 2, 2017, Gavin sent Hayes an email concerning the March 30, 2017 email that stated:

> *Hi Captain. You have told me, I am the commander of both CACU and HTU. This latest email concerns me for 2 reasons, communication and chain of command. Since any discussions concerning personnel should include me as unit commander, I am requesting your assistance in correcting these problems. Once I get your response I speak with Tom and Brian. Thanks very much. Donna.*

47.   On April 2, 2017, Hayes replied to Gavin's email stating, in part, the following:

> *You are the commander of both units . . . Also, concerning your constant complaints about office space, the department has been diligently been working on it for months. You cannot file a grievance since there is no provision in the contract, collective bargaining agreement that provides for office space for anyone. I have also spoke with Union Vice President Talbot on this as well and **I am aware of your threats to go to the MCAD on this office space issue. So if that is what you want to do then I suggest you go ahead and do so.** I would appreciate it if you would focus more time with CACU issues than with trying to secure a different office space.*

(emphasis added)

48.   Hayes cc'd Gavin's subordinates on the April 2, 2017 email. Gavin felt that Hayes' email was threatening and a blatant attempt to intimidate and coerce her.

49.   On or about April 20, 2017, Gavin learned that case files were missing from the HTU. Gavin made inquiries by email concerning the missing files. Gavin then learned from Hayes that he had been secretly removing case files from HTU and reviewing them within the last few weeks. This revelation was shocking as Hayes had just conducted a case review on March 21, 2017, and did not inform Gavin of this new "secret" review. Gavin believed that this was discriminatory and retaliatory behavior by Hayes in response to her complaints.

50.   On or about April 24, 2017, Gavin made a formal complaint to Superintendent Gregory Long ("Long"). The complaint stated, in part, the following:

*I respectfully request to file a formal complaint pursuant to Rule 114 (Harassment Policy) of the Boston Police Department. Since 2016, I have been the subject to a hostile working environment based upon my gender by Captain Detective Mark Hayes, my direct supervisor. In addition I have been discriminated against based on my gender and retaliated against by Captain Hayes for complaining about the discrimination. Finally, Captain Hayes, on at least one occasion, has attempted to intimidate and coerce me from exercising my right to be free from discrimination. I respectfully ask to meet and discuss my complaint at your earliest opportunity. Respectfully submitted, Lt. Det. Donna Gavin.*

51.   On April 27, 2017, Gavin and her attorneys met with the BPD's Internal Affairs Department ("IAD") concerning her April 24, 2017 complaint. Superintendent Francis Mancini ("Mancini"), who was in charge of the BPD's Bureau of Professional Standards was present at the meeting along with an IAD investigator and Mary Flaherty, Deputy Director of BPD's Human Resource Division. During the meeting Mancini indicated that if Hayes retaliated against Gavin she was to inform him directly.

52.   On or about May 1, 2017, Gavin was informed by an outside agency that there was going to be an operation initiated in which some of her subordinates were involved. The outside agency invited Gavin to participate in a briefing concerning the operation.

53.   Gavin was unaware of any operation. Gavin approached one of her subordinates about the impending operation. The subordinate indicated that Hayes told her that the operation was a "secret."

54.   Hayes deliberately circumvented the chain of command and froze Gavin out of activities involving detectives that she directly supervised in retaliation for her filing a complaint.

55.   Gavin then emailed Hayes and Ayala, among others, concerning the pending operation and her concerns about being uninformed about an operation involving her subordinates. Ayala told Gavin that her sergeant could handle it and to not attend the briefing to which the outside agency invited her. Gavin believed that this was done in

retaliation for filing a complaint against Hayes and was intended to humiliate and embarrass Gavin in front of her subordinates and outside agencies.

56.     On May 2, 2017, Hayes handed Gavin a seventeen (17) page criticism of the HTU during a meeting.  Gavin believed that this was done in retaliation for her filing a complaint of discrimination.

57.     On May 5, 2017, Gavin ordered Miller to write a report concerning his activities surrounding the "secret" operation that was conducted on or about May 4, 2017. Miller by-passed the chain of command and contacted Ayala.

58.     On May 8, 2017, Ayala contacted Gavin, via email, and countermanded Gavin's order to Miller in contravention of BPD policies and procedures.   Gavin believed that this was done in retaliation for filing a complaint against Hayes.

59.     On May 16, 2017, Hayes filed a forty-five (45) page complaint with IAD charging Gavin with neglect of duty and directives or orders.  Gavin believed this complaint was retaliatory.

60.     On or about May 17, 2017, Ayala contacted Gavin, via the telephone and informed her that she would now be reporting directly to Ayala instead of Hayes.  When Gavin questioned Ayala about the command structure concerning detectives under her command Ayala stated that all officers under her command would continue to report to Gavin and Gavin would report to Ayala.

61.     On May 23, 2017, Hayes sent an email to Gavin and all of her subordinates in both the HTU and CACU titled "Chain of Command" which stated, in relevant part:

*FYI, Due to the fact that Lt.. Gavin filed a Rule 114 complaint against me with the Internal Affairs Division, Lt. Det. Gavin will no longer report to me.  Lt. Gavin will report directly to Deputy Ayala until the IAD investigation has been completed. This **only** applies to Lt. Gavin.  Detectives will continue to report to their respective Sergeants. Sergeants will continue to report to Lt. Gavin.  However, all detectives and all sergeants can and will still report to me as well.  I am the commander of the Family Justice Unit and I still need to be kept informed about what is going on in your respective units and with your cases.  The **only** thing that has changed while the IAD investigation is that Lt. Gavin herself, will report directly to Deputy Ayala, instead of*

*reporting directly to me.  If I have any questions or concerns I will speak with the sergeants and/or detectives directly.*

62.     Hayes' email of May 23, 2017, in which all of Gavin's subordinates were cc'd, was a blatant violation of Rule 114 of the BPD's Rules and Procedures which governs, among other things, the confidentiality of IAD investigations and complaints (including complaints of discrimination and/or harassment).

63.     Hayes' conduct in sending the May 23, 2017, email was retaliatory in nature and a blatant attempt to intimidate and/or coerce Gavin from pursuing her internal complaint of discrimination.

64.     On or about May 23, 2017, Gavin filed a complaint of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

65.     On or about May 31, 2017, Gavin met with IAD concerning Hayes' retaliatory conduct towards her.  Gavin asked to speak directly with Mancini concerning Hayes' retaliatory conduct.  The IAD investigator left the interview to see if Mancini was available to speak with Gavin and upon his return indicated that Mancini was not prepared to speak with Gavin.  The IAD investigator then told Gavin that Mancini directed her to report any retaliatory conduct to Ayala.

66.     On or about June 7, 2017, Gavin sent a report outlining the retaliatory conduct that Hayes subjected her to since the filing of her April 24, 2017, complaint of discrimination and harassment.

67.     Since filing her complaint of discrimination and harassment with IAD, Hayes and individuals under Hayes' and Hayes' brother-in-law's command, have made statements regarding Hayes' retaliation against Gavin.    During the summer of 2016 at a social event, a sergeant under Hayes' brother-in-law's command (Hayes' brother-in-law is one of the two Lieutenant Detectives who report to Hayes at the FJC) stated

11

that Hayes was going to "get her" [Gavin].  Hayes reportedly told detectives under his

command that he "had her"[Gavin].  Hayes told a command staff member that he had

her [Gavin]. Finally, at another social gathering on or about September 28, 2018,

Hayes' told a retired BPD employee that he "had her" and that he has kept a dossier

on Gavin.

68.   On two (2) occasions since Gavin's complaint of discrimination and harassment,

frivolous IAD complaints have been filed against Gavin on behalf of other officers

claiming that Gavin was harassing them and creating a hostile work environment.

Upon information and belief, Hayes encouraged said officers to pursue frivolous

charges against Gavin in an attempt to intimidate and coerce her.

69.   Throughout Gavin's tenure as commander of HTU/CACU, Hayes repeatedly

attempted to undermine her authority with subordinates, delegitimize her

position/rank and humiliate and embarrass her.  Additionally, Hayes micro-managed

and hyper scrutinized Gavin's management of both the HTU/CACU which was not

warranted.  Hayes did not treat Gavin's male counterparts in the same fashion.

70.   As of March 14, 2018 (approximately one year) the IAD investigation filed by Gavin

has not been completed and Hayes continues to retaliate and undermine Gavin.

Although requested on numerous occasions, Mancini and IAD have refused to

provide Gavin and her attorneys with a copy of Hayes' 45 page IAD complaint

against Gavin.

**COUNT ONE**
**GENDER DISCRIMINATION AND HOSTILE WORK**
**ENVIRONMENT BASED ON GENDER**
**(Violation of M.G.L. c.151B, § 4 [1])**
**(Against Boston Police Department)**

71.   Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1

through 70 above and incorporates same by reference.

72.    Defendant, BPD discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on her gender as outlined above in paragraphs 1-70. Additionally, BPD created and maintained a hostile work environment against Plaintiff based on her gender.

73.    As a result of the BPD's conduct, Plaintiff has suffered damages, including but not limited to, lost wages, emotional distress damages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, Boston Police Department, in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT TWO
### RETALIATION (Violation of M.G.L. c.151B, § 4 [4])
### (Against Mark Hayes & Boston Police Department)

74.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 73 above and incorporates same by reference.

75.    Plaintiff engaged in protected activity by complaining of discrimination, to the BPD and Hayes.

76.    Plaintiff engaged in protected activity by complaining of retaliation by Hayes to the BPD.

77.    Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination on or about May 23, 2017.

78.    Defendants BPD and Hayes retaliated against Plaintiff for engaging in protected activity as outlined above in paragraphs 1-77.

79.    As a result of the Defendants' conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendants, Boston Police Department and Mark Hayes in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT THREE
## INTERFERENCE WITH THE RIGHT TO BE FREE FROM DISCRIMINATION
### (Violation of M.G.L. c.151B, § 4 [4A])
### (Against Mark Hayes)

80.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 79 above and incorporates same by reference.

81.    Plaintiff exercised rights granted and/or protected under M.G.L. c.151B as outlined in Paragraphs 1-80 above.

82.    Defendant Hayes interfered, coerced, intimidated and/or threatened Plaintiff as a result of her activities outlined in Paragraphs 1- 81 above.

83.    As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, Mark Hayes in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.

## COUNT FOUR
## AIDING AND ABETTING
### (Violation of M.G.L. c.151B, § 4 [5])
### (Against Mark Hayes)

84.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 83 above and incorporates same by reference.

85.    Defendant Hayes aided, abetted, incited, compelled and/or coerced BPD into retaliating against Plaintiff as outlined in Paragraphs 1-84 above.

86.     As a result of the Defendant's conduct, Plaintiff has suffered damages, including but not

        limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and

        interest.

        **WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, Mark

Hayes in an amount that the Court deems just, plus interest, costs, and attorneys' fees where

applicable.

**COUNT FIVE**
**GENDER DISCRIMINATION AND HOSTILE WORK**
**ENVIRONMENT BASED ON GENDER**
**(Violation of Title VII, 42 U.S.C. § 2000e-2)**
**(Against Boston Police Department)**

87.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1

        through 86 above and incorporates same by reference.


88.     Defendant, BPD discriminated against Plaintiff with respect to terms, conditions, and/or

        privileges of employment based on her gender as outlined above in paragraphs 1-87.

        Additionally, BPD created and maintained a hostile work environment against Plaintiff

        based on her gender.

89.     As a result of the BPD's conduct, Plaintiff has suffered damages, including but not

        limited to, lost wages, emotional distress damages, costs, reasonable attorney's fees and

        interest.

        **WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, Boston

Police Department, in an amount that the Court deems just, plus interest, costs, and attorneys'

fees where applicable.

**COUNT SIX**
**RETALIATION (Violation of Title VII, 42 USC § 2000e-3)**
**(Against Mark Hayes & Boston Police Department)**

90.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1

        through 89 above and incorporates same by reference.

91.   Plaintiff engaged in protected activity by complaining of discrimination, to the BPD and Hayes.

92.   Plaintiff engaged in protected activity by complaining of retaliation by Hayes to the BPD.

93.   Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on or about May 23, 2017.

94.   Defendants BPD and Hayes retaliated against Plaintiff for engaging in protected activity as outlined above in paragraphs 1-93.

95.   As a result of the Defendants' conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

   **WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendants, Boston Police Department and Mark Hayes in an amount that the Court deems just, plus interest, costs, and attorneys' fees where applicable.


**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.**


PLAINTIFF,
DONNA GAVIN

Date: March 16, 2018          By:

Dan V. Bair II, Esq. (BBO# 654369)
dbair@danbairlaw.com
Dan V. Bair, Attorney at Law
15 Foster Street
Quincy MA  02169
Tel: (508) 277-0720
Fax: (617) 770-4091


By:

Kevin Mullen, Esq. (BBO# 600535)
kevinrmullen@verizon.net

16

15 Foster Street
Quincy, MA  02169
Tel: (617) 417-1097
Fax: (617) 770-4091

**(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:**
**TORT - MOTOR VEHICLE TORT - CONTRACT -**
**EQUITABLE RELIEF - OTHER)**

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. **18 0348**

_Donna Gavin_ , *Plaintiff(s)*

v.

_Boston Police Department and_
_Mark Hayes_ , *Defendant(s)*

### SUMMONS

To the above-named Defendant: Mark Hayes

You are hereby summoned and required to serve upon _Dan V. Bair II_ ,
plaintiff's attorney, whose address is _15 Foster Street, Quincy, MA 02169_,
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

WITNESS, JUDITH FABRICANT, Esquire , at ................................ the ................

day of ........................................................, in the year of our Lord two thousand and ................

_Walter F. Timilty_ , *Clerk.*

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption.
   If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ........................................., 20      , I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

I, Evan C. Ouellette, Esq., of Brody, Hardoon, Perkins + Kesten, LLP, Attorney for Defendant, Mark Hayes, hereby accept Service of the Plaintiff's Complaint on this 18 day of April, 2018.

Dated: April 18      , 20 18      Evan C. Ouellette

**N. B.  TO PROCESS SERVER:-**
     **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
     **THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON**
     **DEFENDANT.**

........................................, 20      .

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO.

........................., *Plaintiff*

v.

........................., *Defendant*

**SUMMONS**

**(Mass. R. Civ. P.4)**