UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA GAVIN<br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON and MARK HAYES<br>    Defendants. | C. A. No. 1:18-cv-10819-LTS |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

I. Nature of the Action

1. Plaintiff Donna Gavin ("Gavin"), brings this action against the City of Boston ("Boston") and Mark Hayes ("Hayes") for gender discrimination, hostile work environment based on gender, retaliation, aiding and abetting in discriminatory practices, and coercion, intimidation, threats and interfering with the right to be free from discrimination in violation of Massachusetts General Laws, Chapter 151B, Sections 4 (1), 4 (4), 4(4A) and 4 (5). Additionally, Gavin brings this action against Boston for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

II. The Parties

2. Plaintiff, Donna Gavin is a natural person residing at: 88 Wharf Street, Milton, Norfolk County, Massachusetts.

3. The City of Boston is a municipality located in Suffolk County, Massachusetts. Boston Police Department ("BPD"), is a political subdivision of Boston located at One Schroeder Plaza, Boston, Suffolk County, Massachusetts.

1

4. Defendant, Mark Hayes, is an individual located at One Schroeder Plaza, Boston, Suffolk County, Massachusetts.

### III. Venue

5. Venue is proper as Plaintiff resides in Milton, Norfolk County, Massachusetts.

### IV. The Facts

6. Boston is an employer as defined under G.L. c. 151B, § 1(5). BPD is a paramilitary organization with a well-defined command structure.

7. At all times relevant, Gavin was the only, or one of the only, female Lieutenant Detective employed by the BPD, and the highest ranking civil servant at the BPD.

8. Gavin has been an employee of BPD for approximately thirty-two (32) years and has always performed her job in a satisfactory manner earning commendations, regular pay increases, and numerous awards. After Gavin tied for second place on the Lieutenant's exam, Gavin was promoted to temporary Lieutenant in April 2015 until July 2015 and again in October 2015 until March 2016. In March of 2016 Gavin was promoted to permanent Lieutenant. On or about October 15, 2016, Gavin was promoted to Lieutenant Detective.

9. On May 11, 2016, Hayes sent Gavin an email alerting her that "City Hall" and the BPD were creating a new position, Lieutenant Detective, for the Commander of the Human Trafficking Unit ("HTU") and the Crimes Against Children Unit ("CACU").

10. On May 13, 2016, Gavin was transferred and assumed command of both the HTU and the CACU of the BPD. Additionally, Gavin was assigned as Boston's City Empowered Against Sexual Exploitation ("CEASE") co-coordinator. From 2010 until her promotion to temporary Lieutenant in 2015, and then again from May of 2016 until approximately March, 2019, Captain Mark Hayes was Gavin's direct supervisor. In or about June of 2017, the BPD informed Gavin and Hayes that Gavin would report directly to the Deputy Superintendent overseeing Hayes, but Hayes in fact continued to supervise her in many respects.

11. Gavin interpreted Hayes' email as an attempt by Hayes to delegitimize her position and rank as the email was cc'd to two (2) of her subordinate Sergeants and an IT technician.

12. Two (2) other male Lieutenant Detectives, one of whom is Hayes' brother-in-law, were supervised by Hayes in addition to Gavin.

13. The HTU and CACU are housed at the Family Justice Center ("FJC") with the Suffolk County District Attorney's Children's Advocacy Center ("CAC") and other service providers who work with abused, neglected and sexually exploited children and adults. Gavin was led to believe that she was being transferred to the FJC because of her expertise in sex trafficking investigation, to lead Boston's CEASE initiative, and to oversee the CACU and HTU. The CACU was staffed with two veteran sergeant detectives, one of which had been overseeing the HTU prior to Gavin's transfer. Gavin, Hayes and the two (2) other male Lieutenant Detectives all worked at the FJC.

14. Upon her arrival as Lieutenant Detective, Gavin was given a small cubicle at the FJC with no privacy to conduct her work. Gavin's cubicle was actually smaller than the Sergeants that she supervised.

15. The other two male Lieutenant Detectives had large private offices.

16. When Gavin assumed command of HTU/CACU in May 2016, unlike other similarly situated male unit commanders at the FJC, Gavin had little to no input or influence over personnel decisions involving the transfer of detectives and sergeants in and/or out of the units she supervised.

17. On or about May 19, 2016, Gavin was informed that Detective Jerrod Gero ("Gero") was being assigned to HTU and he arrived the next day. Normally, the commander of a unit has advanced notice and some input in the selection of his/her detectives.

18. In June of 2016, Hayes conducted a case review of the CACU with Gavin. Gavin did not think this review was outside the norm as she had just assumed command of the CACU.

19. In August of 2016, Hayes sent an email concerning the building of an interview room at the FJC, but there was no mention of a private office for Gavin.

20. In late May of 2016, after being told that HTU staff was being increased, Gavin told Hayes she wanted more diversity in the unit. On or about September 2, 2016, after being asked to recruit a detective for the CACU, Gavin sought to have an African-American detective transferred to the unit. Hayes stated in an email that that transfer was not going to occur.

21. The reason that Hayes gave Gavin that the transfer was not going to occur was because Sergeant Brian Miller ("Miller") vetoed the transfer. Miller was one of Gavin's direct subordinates.

22. Upon information and belief, Hayes does not allow subordinates of the two (2) male Lieutenant Detectives to veto personnel transfers.

23. On September 30, 2016, Gavin was summoned to a meeting with Hayes and Deputy Superintendent Norma Ayala ("Ayala"). Hayes and Ayala notified Gavin that they were transferring out of HTU two (2) experienced and dedicated detectives (both female) and were transferring into the HTU two (2) African American female detectives. These transfers were to occur in November 2016.

24. Gavin welcomed the two (2) new detectives; however, protested the transfer out of the HTU of two (2) veteran female detectives. Gavin questioned why they were being transferred out of HTU instead of Gero (the two female detectives both had more seniority than Gero, both in the unit and as detectives). Additionally, one of the detectives had been awarded detective of the year by her peers and the other was an openly gay female. Gavin informed Hayes and Ayala that Gero, although a good investigator, lacked the proper victim centered skills to interact with victims of human trafficking in order to persuade them to cooperate in sex trafficking prosecutions. Additionally, Gavin had also received complaints about Gero from victim service providers at the FJC, including a survivor who reported that Gero was disrespectful to her during a presentation she was giving. Gavin's concerns about the personnel transfers were ignored. Hayes claimed that these transfers were due to Gavin's request for "diversity" in the HTU.

25. In October 2016, Hayes conducted a second case review of the CACU. Upon information and belief, Hayes did not conduct case reviews of the male Lieutenant Detectives' respective unites.

26. On November 5, 2016, Hayes sent Gavin an email concerning the transfer of the two (2) HTU female detectives. Hayes threatened Gavin to not contact Mayor Walsh about the impending transfers. Hayes cc'd Gavin's subordinates on the email.

27. Gavin believed that Hayes' threat was an attempt to undermine her authority with her subordinates, delegitimize her position and rank, and humiliate and embarrass her. Upon information and belief Hayes does not treat Gavin's male counterparts in such a condescending and unprofessional manner.

28. On December 21, 2016, Hayes sent Gavin an email concerning a pending case. Hayes cc'd multiple subordinates and outside agencies. In the email Hayes criticized Gavin's work performance and decision making on the pending case. Upon information and belief, Hayes did not treat Gavin's male counterparts in the same fashion when addressing alleged performance issues. Hayes' deliberately eschewed the facts of the pending case in order to diminish Gavin's reputation with outside agencies and subordinates.

29. Additionally, Hayes repeatedly allowed Gavin's subordinates to circumvent the chain of command and report directly to him, despite Gavin's protests to the contrary.

30. Hayes also countermanded Gavin's orders without justification on repeated occasions and cc'd subordinates and outside agencies concerning it.

31. On January 13, 2017, Gavin wrote a report to Hayes concerning Gero. In the report, Gavin was critical of Gero's conduct during an investigation and suggested that he receive additional training.

32. Hayes then started an "investigation" into her report on Gero, in which he conducted interviews and contacted outside agencies. Hayes' impromptu investigation and behavior was outside of normal procedures and/or practices.

33. On or about January 17, 2017, facility maintenance personnel brough an architect to the FJC regarding building an interview room and Gavin's office space. The architect asked Gavin who she was. After Gavin explained that she was a Lieutenant Detective the architect asked where the other Lieutenant Detectives' offices were located.

34. The architect then told Gavin that her private office could be located near the other Lieutenant Detectives' offices. The architect stated that he and facility maintenance personnel would review the buildings' blue prints in order to create Gavin's office.

35. On January 26, 2017, Hayes stated in an email that Gavin was cc'd on, that her office was "cost prohibitive."

36. At some point prior to March 2017, Gavin contacted her union and complained that she was being treated differently than her male counterparts with respect to her lack of a private office. Upon information and belief, the union contacted the BPD and relayed her concerns regarding her lack of a private office.

37. On March 4, 2017, a sergeant was transferred into the HTU, per Hayes' request, without Gavin's input or knowledge. Hayes contacted Gavin to let her know. During the conversation, Gavin asked Hayes about the status of her private office. Hayes told her that she was not getting a private office.

38. During the conversation on March 4, 2017, Gavin told Hayes that she felt as though she was being discriminated against by the BPD because she was not receiving a private office like her male counterparts. Hayes then stated that Gavin's job was "created" and it did not come with an office. At no time did Hayes report Gavin's March 4, 2017, complaint of discrimination to anyone within the BPD.

39. Gavin then contacted her union and complained that she was not getting a private office. Gavin also contacted BPD headquarters and complained.

40. As a result of Gavin's complaint, facility maintenance returned to the FJC on March 6, 2017.

41. Hayes' supervisor, Ayala and facility maintenance notified Gavin that they determined that her office would be located opposite from the other Lieutenant Detectives' offices, in a back hallway overlooking a dumpster and alley. Gavin found this to be demeaning and humiliating.

42. On March 7, 2017, Gavin called facility maintenance and stated that she could not agree to the space that they picked out as it was isolated and not comparable to the offices of her male counterparts (especially since there was available space at the front of the building and next to the other male lieutenant detectives). Facility maintenance agreed to return to the FJC.

8

43. On March, 21, 2017, Hayes conducted a case review of the HTU for cases in 2015, 2016 and up to March 2017. At no time during the case review did Hayes raise any concerns regarding record keeping. On March 22, 2017, Hayes emailed Gavin agreeing that the case review went well.

44. On March 27, Gavin contacted her union concerning the private office. Upon information and belief the union contacted both Hayes and the BPD administration concerning Gavin receiving a private office.

45. On or about March 30, 2017, Hayes sent Gavin an email concerning detectives within her command (and again cc'd subordinates).

46. On April 2, 2017, Gavin sent Hayes an email concerning the March 30, 2017 email that stated:

    *Hi Captain. You have told me, I am the commander of both CACU and HTU. This latest email concerns me for 2 reasons, communication and chain of command. Since any discussions concerning personnel should include me as unit commander, I am requesting your assistance in correcting these problems. Once I get your response I [sic] speak with Tom and Brian. Thanks very much. Donna.*

47. On April 2, 2017, Hayes replied to Gavin's email, stating in part, the following:

    *You are the commander of both units… Also, concerning your constant complaints about office space, the department has been diligently been working on it for months. You cannot, file a grievance since there is no provision in the contract, collective bargaining agreement that provides for office space for anyone. I have also spoke with Union Vice President Talbot on this as well and **I am aware of your threats to go to the MCAD on this office space issue. So if that is what you want to do then I suggest you go ahead and do so**. 1 would appreciate it if you would focus more time with CACU issues than with trying to secure a different office space.*

    (emphasis added).

48. Hayes cc'd Gavin's subordinates on the the April 2, 2017 email. Gavin felt that Hayes' email was threatening and a blatant attempt to intimidate and coerce her.

9

49. On or about April 20, 2017, Gavin learned that case files were missing from the HTU. Gavin made inquiries by email concerning the missing files. Gavin then learned from Hayes that he had been secretly removing case files from HTU and reviewing them within the last few weeks. This revelation was shocking as Hayes had just conducted a case review on March 21, 2017, and did not inform Gavin of this new "secret" review. Gavin believed that this was discriminatory and retaliatory behavior by Hayes in response to her complaints.

50. On or about April 24, 2017, Gavin made a formal complaint to Superintendent Gregory Long ("Long"). The complaint stated, in part, the following:

    *I respectfully request to file a formal complaint pursuant to Rule 114 (Harassment Policy) of the Boston Police Department. Since 2016, 1 have been the subject to a hostile working environment based upon my gender by Captain Detective Mark Hayes, my direct supervisor. In addition 1 have been discriminated against based on my gender and retaliated against by Captain Hayes for complaining about the discrimination. Finally, Captain Hayes, on at least one occasion, has attempted to intimidate and coerce me from exercising my right to be free from discrimination. I respectfully ask to meet and discuss my complaint at your earliest opportunity. Respectfully submitted, Lt. Det. Donna Gavin.*

51. On April 27, 2017, Gavin and her attorneys met with the BPD's Internal Affairs Department ("IAD") concerning her April 24, 2017 complaint. Superintendent Francis Mancini ("Mancini"), who was in charge of the BPD's Bureau of Professional Standards was present at the meeting along with an IAD investigator and Mary Flaherty, Deputy Director of BPD's Human Resource Division. During the meeting Mancini indicated that if Hayes retaliated against Gavin she was to inform him directly.

52. On or about May 1, 2017, Gavin was informed by an outside agency that there was going to be an operation initiated in which some of her subordinates were involved. The outside agency invited Gavin to participate in a briefing concerning the operation.

53. Gavin was unaware of any operation. Gavin approached one of her subordinates about the impending operation. The subordinate indicated that Hayes told her that the operation was a "secret."

54. Hayes deliberately circumvented the chain of command and froze Gavin out of activities involving detectives that she directly supervised in retaliation for her filing a complaint.

55. Gavin then emailed Hayes and Ayala, among others, concerning the pending operation and her concerns about being uninformed about an operation involving her subordinates. Ayala told Gavin that her sergeant could handle it and to not attend the briefing to which the outside agency invited her. Gavin believed that this was done in retaliation for filing a complaint against Hayes and was intended to humiliate and embarrass Gavin in front of her subordinates and outside agencies.

56. On May 2, 2017, Hayes handing Gavin a seventeen (17) page criticism of the HTU during a meeting. Gavin believed this was done in retaliation for her filing a complaint of discrimination.

57. On May 5, 2017, Gavin ordered Miller to write a report concerning his activities surrounding this "secret" operation that was conducted on or about May 4, 2017. Miller by-passed the chain of command and contacted Ayala.

58. On May 8, 2017 Ayala contacted Gavin, via email, and countermanded Gavin's order to Miller in contravention of BPD policies and procedures. Gavin believed that this was done in retaliation for filing a complaint against Hayes.

59. On May 16, 2017, Hayes filed a forty-five (45) page complaint with IAD charging Gavin with neglect of duty and directives or orders. Gavin believed this complaint was retaliatory.

60. On or about May 17, 2017, Ayala contacted Gavin, via the telephone and informed her that she would now be reporting directly to Ayala instead of Hayes. When Gavin questioned Ayala about the command structure concerning detectives under her command Ayala stated that all officers under her command would continue to report to Gavin and Gavin would report to Ayala.

61. On May 23, 2017, Hayes sent an email to Gavin and all of her subordinates in both the HTU and CACU titled "Chain of Command" which stated, in relevant part:

    *FYI, Due to the fact that Lt..[sic] Gavin filed a Rule 114 complaint against me with the Internal Affairs Division, Lt. Det. Gavin will no longer report to me. Lt. Gavin will directly to Deputy Ayala until the IAD investigation has been completed. This **only** applies to Lt. Gavin. Detectives will continue to report to their respective Sergeants. Sergeants will continue to report to Lt. Gavin. However, all detectives and all sergeants can and will still report to me as well. I am the commander of the Family Justice Unit and I still need to be kept informed about what is going on in your respective units and with your cases. The **only** thing that has changed while the IAD investigation is that Lt. Gavin herself will report directly to Deputy Ayala, instead of reporting directly to me. If I have any questions or concerns I will speak with the sergeants and/or detectives directly.*

62. Hayes' email of May 23, 2017, in which all of Gavin's subordinates were cc'd, was a blatant violation of Rule 114 of the BPD's Rules and Procedures which governs, among other things, the confidentiality of IAD investigations and complaints (including complaints of discrimination and/or harassment).

12

63. Hayes' conduct in sending the May 23, 2017, email was retaliatory in nature and a blatant attempt to intimidate and/or coerce Gavin from pursuing her internal complaint of discrimination.

64. On or about May 23, 2017, Gavin filed a complaint of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

65. On or about May 31, 2017, Gavin met with IAD concerning Hayes' retaliatory conduct towards her. Gavin asked to speak directly with Mancini concerning Hayes' retaliatory conduct. The IAD investigator left the interview to see if Mancini was available to speak with Gavin and upon his return indicated that Mancini was not prepared to speak with Gavin. The IAD investigator then told Gavin that Mancini directed her to report any retaliatory conduct to Ayala.

66. On or about June 7, 2017, Gavin sent a report outlining the retaliatory conduct that Hayes subjected her to since the filing of her April 24, 2017, complaint of discrimination and harassment.

67. Since filing her complaint of discrimination and harassment with IAD, Hayes and individuals under Hayes' and Hayes' brother-in-law's command, have made statements regarding Hayes' retaliation against Gavin. During the summer of 2016 at a social event, a sergeant under Hayes' brother-in-law's command (Hayes' brother-in-law is one of the two Lieutenant Detectives who report to Hayes at the FJC) stated that Hayes was going to "get her" [Gavin]. Hayes reportedly told detectives under his command that he "had her"[Gavin]. Hayes told a command staff member that he had her [Gavin]. Finally, at another social gathering on or about September 28, 2018, Hayes' told a retired BPD employee that he "had her" and that he has kept a dossier on Gavin.

68. On two (2) occasions since Gavin's complaint of discrimination and harassment, frivolous IAD complaints have been filed against Gavin on behalf of other officers claiming that Gavin was harassing them and creating a hostile work environment. Upon information and belief, Hayes encouraged said officers to pursue frivolous charges against Gavin in an attempt to intimidate and coerce her.

69. Throughout Gavin's tenure as commander of HTU/CACU, Hayes repeatedly attempted to undermine her authority with subordinates, delegitimize her position/rank and humiliate and embarrass her. Additionally, Hayes micro-managed and hyper-scrutinized Gavin's management of both the HTU/CACU, which was not warranted. Hayes did not treat Gavin's male counterparts in the same fashion.

70. On or about March 23, 2019, following her complaints of discrimination and retaliation and with this lawsuit pending, the BPD transferred Gavin out of the FJC and into a position at the Boston Police Academy. As a result of this transfer, Gavin is no longer under the investigative bureau of the BPD, and despite being a Lieutenant Detective (and thus a supervisor), Plaintiff has no detectives reporting to her. For the first time in many years, Plaintiff is no longer performing the detective work that she loves. Instead, she is primarily grading exams. The transfer resulted in the following:

   a. Moreover, due to her commitments at the Boston Police Academy, Gavin is no longer able to attend meetings in connection with her duties as co-chair of CEASE. As a result of this transfer, Gavin is no longer performing any working combatting Human Trafficking or working to protect vulnerable women and children, which was her passion.

   b. Captain Hayes was also transferred out of the FJC on March 23, 2019. However, in contrast to Gavin, he was provided a comparable, if not better, position. Whereas Gavin was stripped of all meaningful authority and investigative duties, Defendant Hayes was transferred to a position at the Boston Police Headquarters and remains under the investigative bureau.

## COUNT ONE
## GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON GENDER
## (Violation of M.G.L. c. 151B, § 4 [1])
## (Against City of Boston)

71. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

72. Defendant, City of Boston discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on her gender as outlined. Additionally, Boston created and maintained a hostile work environment against Plaintiff based on her gender.

73. As a result of the Boston's conduct, Plaintiff has suffered damages, including but not limited to, lost wages, emotional distress damages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, City of Boston, in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

### COUNT TWO
### RETALIATION (Violation of M.G.L. c. 151B, § 4[4])
### (Against Mark Hayes & City of Boston)

74. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

75. Plaintiff engaged in protected activity by complaining of discrimination to the BPD and Hayes.

76. Plaintiff engaged in protected activity by complaining of retaliation by Hayes to the BPD.

77. Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination on or about May 23, 2017. Plaintiff also engaged in protected activity by filing the present lawsuit.

78. Defendants retaliated against Plaintiff for engaging in protected activity as outlined above.

79. As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendants, City of Boston and Mark Hayes in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

### COUNT THREE
### INTERFERENCE WITH THE RIGHT TO BE FREE FROM DISCRIMINATION
### (Violation of M.G.L. c. 151B, § 4[4A])
### (Against Mark Hayes and City of Boston)

80. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

81. Plaintiff exercised rights granted and/or protected under M.G.L. c. 151B as outlined above.

82. Defendants interfered, coerced, intimidated and/or threatened Plaintiff as a result of her activities outlined above.

83. As a result of the Defendants' conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorneys' fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendants, City of Boston and Mark Hayes in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

## COUNT FOUR
## AIDING AND ABETTING
## (VIOLATION OF M.G.L. c. 151B, § 4[5])
## (Against Mark Hayes)

84. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

85. Defendant Hayes aided, abetted, incited, compelled and/or coerced BPD into retaliating against Plaintiff as outlined above.

86. As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorneys' fees and interest.

**WHEREFORE,** Plaintiff Donna Gavin demands judgment against Defendant, Mark Hayes in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

## COUNT FIVE
## GENDER DISCRIMINATION AND HOSTILE WORK
## ENVIRONMENT BASED ON GENDER
## (Violation of Title VII, 42 U.S.C. § 2000e-2)
## (Against City of Boston)

87. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

88. Defendant, City of Boston discriminated against Plaintiff with respect to terms, conditions, and/or privileges of employment based on her gender as outlined above. Additionally, BPD created and maintained a hostile work environment against Plaintiff based on her gender.

89. As a result of the BPD's conduct, Plaintiff has suffered damages, including but not limited to, lost wages, emotional distress, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, City of Boston, in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

**COUNT SIX**
**RETALIATION (Violation of Title VII, 42 USC § 2000e-3)**
**(Against City of Boston)**

90. Plaintiff repeats and re-alleges each and every allegation contained in the proceeding paragraphs as if stated fully herein.

91. Plaintiff engaged in protected activity by complaining of discrimination to the City of Boston and/or various members of the BPD.

92. Plaintiff engaged in protected activity by complaining of retaliation by Hayes to the BPD.

93. Plaintiff engaged in protected activity by filing a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on or about May 23, 2017. Plaintiff also engaged in protected activity by filing the present lawsuit.

94. Defendant City of Boston retaliated against Plaintiff for engaging in protected activity as outlined above.

95. As a result of the City of Boston's conduct, Plaintiff has suffered damages, including but not limited to, emotional distress damages, lost wages, costs, reasonable attorney's fees and interest.

**WHEREFORE**, Plaintiff Donna Gavin demands judgment against Defendant, City of Boston, in an amount to be determined at trial, plus interest, costs, and attorneys' fees where applicable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES**

Respectfully submitted,
**DONNA GAVIN**

By her attorneys,

/s/ Lucia A. Passanisi
Nicholas B. Carter (BBO#561147)
Lucia A. Passanisi (BBO#691189)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
ncarter@toddweld.com
lpassanisi@toddweld.com

Dated: March 12, 2020

**CERTIFICATE OF SERVICE**

I, Lucia A. Passanisi, Esq., hereby certify that the foregoing document was filed through the ECF system and will therefore be sent electronically to all counsel of record as identified on the Notice of Electronic Filing (NEF).

/s/ Lucia A. Passanisi
Lucia A. Passanisi