UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA GAVIN<br>　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF BOSTON and MARK HAYES<br>　　　　Defendants. | C. A. No. 1:18-cv-10819-LTS<br><br>**LEAVE TO FILE GRANTED ON SEPTEMBER 3, 2020** |

**PLAINTIFF DONNA GAVIN'S REPLY BRIEF
IN RESPONSE TO DEFENDANT CITY OF BOSTON'S OPPOSITION**

Plaintiff Donna Gavin ("Plaintiff") submits this reply in response to the assertions raised in the City of Boston's Opposition (Docket No. 96). In its Opposition, Defendant City of Boston ("City") mischaracterizes Plaintiff's reasonable requests for discovery and inappropriately paints Plaintiff, the victim of a hostile work environment, discrimination, and retaliation, as the aggressor for seeking relevant discovery necessary for understanding her claims and the scope of unfavorable treatment she received as compared to other similarly situated male police officers.

   a. **Plaintiff is not seeking an expanded deposition of Superintendent Donovan.**

Though the City contends that Plaintiff is seeking an expanded deposition of Superintendent Paul Donovan, *see* Docket No. 96 at pg. 8, that is false. Plaintiff's counsel purposefully kept his deposition questioning under the two hours ordered by the Court. It is nonsensical that the City would direct a witness – with knowledge as to transfers and opportunities available for Plaintiff, but only offered to male colleagues – not to answer questions directly related to the discrimination against Plaintiff. The line of questioning pursued during the deposition questioning, comparing the career opportunities afforded to Plaintiff with those of the other male

1

supervisors, was entirely relevant to the present litigation, particularly where Plaintiff contends she received an unfavorable transfer and Defendant Hayes along with the three other male supervisors at the Family Justice Center, ultimately received favorable transfers.

Moreover, in regard to Sgt. Det. Miller being placed on leave, the City has asserted the deliberative process as the basis for their refusal to provide information about this critical witness. To be clear, "the deliberative process privilege is a 'discretionary one.'" *See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 885 (1st Cir. 1995) (quoting *In re Franklin Nat'l Bank Sec. Litig.,* 478 F. Supp. 577, 582 (E.D.N.Y. 1979)).  When considering whether the privilege applies, courts consider "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest effective government" and in situations "'where the documents sought may shed light on alleged government malfeasance' the privilege is routinely denied." *See id.* citing *FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984) and quoting *Franklin*, 478 F. Supp. at 587.  Plaintiff wants to know if Sgt. Det. Miller was placed on leave and is being investigated in connection with: (i) allegations pertaining to her complaints of discrimination or harassment and/or (ii) for improperly accessing the internal affairs files relating to her complaint.  Given the fact that it took over two years for BPD to complete its investigation into Plaintiff's complaint, Plaintiff should not have to wait until after her lawsuit concludes to learn the extent of Sgt. Det. Miller's bad acts.

   b. **Plaintiff's Second Set of Requests for Production of Documents Were Not Untimely and by Failing to Serve Responses, the City Waived its Objections to the Requests.[1]**

---

[1] Plaintiff takes this opportunity to address mischaracterizations raised by the City with regard to the scope of discovery.  The City contends that Plaintiff deposed 14 individuals, often using the full seven hours. *See* Docket No. 96 at pg. 4.  Leaving aside the fact that courts regularly grant extensions beyond the seven-hour limit, the depositions of Deputy Sharon Dottin, Superintendent Paul Donovan, and Commissioner William Gross were each less than a half day.  Moreover, to the extent the City designated Mark Lynch and Janet Dougherty as additional 30(b)(6) designees, their depositions were also each less than a half day.  In addition, though the City references that it

Contrary to the City's argument, there simply was no order from the Court or agreement by Plaintiff's counsel that fact discovery would only remain open for the limited purposes of completing depositions. Plaintiff served the City with a Second Request for Production of Documents ("Second Request") on July 9, 2020, and the City's response was due on August 10, 2020, before the discovery deadline of August 14, 2020 per the Court's prior Order (Docket No. 89).  The City failed to provide written responses to the Second Request until August 13, 2020, the day *after* Plaintiff filed her Motion to Compel (Docket No. 95).  *See* Docket No. 96-4, Defendant City of Boston's Responses to Plaintiff's Second Set of Requests for Production of Documents dated August 13, 2020.  The City made boilerplate objections to every request and still has not produced any documents.  As the City made the calculated decision not to provide responses to the Second Request until after the deadline to respond had passed, it has waived the right to make objections. *See Willard v. Constellation Fishing Corp.,* 136 F.R.D. 28, 31 (D. Mass. 1991) ("Failure to file a timely objection to a request for production of documents constitutes a waiver of any objections which a party might have to the requests").  Accordingly, Plaintiff contends that the City should be compelled to produce documents on this ground alone.

Plaintiff takes the opportunity to address a few of the City's specific (though untimely) objections  As to request numbers 65 and 66, Donna Gavin seeks to understand which members of the BPD (wrongfully) accessed the internal affair files relating to the complaints she and Defendant Hayes had submitted for internal review.  Lt. Det. Gavin understands that the confidential internal affairs files were accessed to assist Capt. Hayes.  Plaintiff further understands

---

produced over 10,000 documents, (*see* Docket No. 96 at pg. 4), this is actually not the number of documents, but rather the number of pages and constituted a document dump.  The City has withheld some of the most important documents which Plaintiff seeks by way of this motion.

3

that Sgt. Det. Miller was transferred to IAD in April of 2019 and would have had access to the files. Despite Defendant's assertion that the "internal affairs investigation was wrapping up," and leaving aside the fact that the City appears to be delaying implementing discipline (resulting in Plaintiff being unable to appeal the charges), Plaintiff did not receive the findings until July of 2019. Through the course of discovery as evidenced both in documents produced by the City and in deposition testimony from multiple witnesses, Sgt. Det. Miller has established himself as a key player in the hostile environment Plaintiff faced. Plaintiff remains concerned that information was inappropriately accessed or leaked by Sgt. Det. Miller to Defendant Hayes. As the City states, Sgt. Det. Miller was not assigned to investigate Plaintiff's internal affairs allegations; as a witness, he had no right to access or to leak the information related to the internal affairs allegations to Captain Hayes or to anyone else. The City should be compelled to produce the IAPro records so that Plaintiff can understand: (1) whether others who were not involved in the investigation were accessing what was otherwise a confidential file; and (2) if so, whether the investigation into her concerns was tainted. The IAPro records are not voluminous and, thus, the City can easily produce them subject to the parties' protective order.

As to Request No. 61, which seeks the investigation report or analysis conducted by Leonard Kesten as to gender/sex discrimination at the Boston Police Department ("BPD"), Plaintiff understands that she is one of several female members of the BPD who have active claims of discrimination against the City. Deputy Superintendent Beth Donovan is another female supervisor within the BPD who has pending discrimination claims. Deputy Superintendent Beth Donovan participated in an independent investigation about discrimination against female supervisors at the BPD in which Plaintiff believes she was referenced as a victim of discrimination. The report concerns proof of a culture and climate where female supervisors, like Donna Gavin

are subjected to discrimination or retaliation on the basis of gender.  This report is entirely relevant to Plaintiff's claims and it should be produced.

   **c. Plaintiff is not harassing Det. Gero; rather she seeks to ascertain whether her assessment of his policing skills was supported by other members of the BPD.**

Finally, with regard to the discovery sought pertaining to Det. Gero, Defendants have painted a false narrative that Plaintiff dislikes Det. Gero or is intending to harass him, by seeking to know whether he, a junior, male detective, received discipline related to improper conduct as a police officer.  Without citing to any testimony from Plaintiff – *because such testimony does not exist* – the City states that Plaintiff has "adamant hatred towards Det. Gero."  *See* Docket No. 96 at pg. 8.  This is a false and unsupported.  To the contrary, multiple deponents, including Plaintiff, Janet Dougherty, and Ludwik Bartkiewicz testified that Det. Gero displayed a disrespectful or hostile attitude against Plaintiff.  Plaintiff contends that Det. Gero's brazenly disrespectful conduct, which was condoned by Captain Hayes, contributed to the hostile work environment she experienced.  The City mistakes zealous advocacy by Plaintiff's attorneys in pursuing relevant discovery to combat Defendant Hayes's false characterization of Det. Gero as a model employee.  It is public knowledge that Det. Gero has had IAD charges sustained against him, apparently for lack of judgment.  Understanding Det. Gero's disciplinary history, and whether Plaintiff's assessment of his policing skills was supported by other members of the BPD, is not intended to harass, but instead only to prove that Plaintiff was correct when she sought to supervise him because in her view he needed training and lacked judgment.  Plaintiff was punished by Captain Hayes for trying to exercise appropriate supervisory authority over Det. Gero.  Thus, Plaintiff requests the relevant discovery related to Det. Gero – both documents and deposition testimony – sought in her Motion to Compel.

## CONCLUSION

For the reasons set forth herein, and for those set forth in her Motion to Compel, Plaintiff requests that the Court grant her motion.

Respectfully submitted,

**DONNA GAVIN**

By her attorneys,

*/s/ Lucia A. Passanisi*
Nicholas B. Carter (BBO#561147)
Lucia A. Passanisi (BBO#691189)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel:  (617) 720-2626
Fax: (617) 227-5777
ncarter@toddweld.com
lpassanisi@toddweld.com

Dated:  September 4, 2020

## CERTIFICATE OF SERVICE

I, Lucia A. Passanisi, Esq., hereby certify that the foregoing document was filed through the ECF system and will therefore be sent electronically to all counsel of record as identified on the Notice of Electronic Filing (NEF).

*/s/ Lucia A. Passanisi*