## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 1:18-cv-10819**

**DONNA GAVIN,**
     **Plaintiff,**

**v.**

**BOSTON POLICE DEPARTMENT
and MARK HAYES**
     **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE, OR LIMIT, TESTIMONY OF THOMAS G. STACK

Now comes the Defendant Boston Police Department who hereby moves *in limine* to exclude or limit the testimony of Thomas G. Stack on the grounds that: (i) Mr. Stack's testimony is not relevant to the present litigation; and (ii)  Mr. Stack's testimony is on matters that cannot be scientifically verified.

## I.     FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiff is a Lieutenant Detective in the Boston Police Department ("BPD"). She has sued BPD and her former captain, Mark Hayes, alleging various violations of Title VII and M.G.L. ch.  151B, § 4, including discrimination on the basis of gender, hostile work environment, and retaliation.  (See ECF No. 80.)

The Court ordered Plaintiff to disclose her experts by December 13, 2019. Plaintiff requested several extensions of time to disclose her experts and was ultimately permitted to disclose experts by October 1, 2020.  (ECF No. 104.) Plaintiff disclosed two experts on September 11, 2020: (i) Dr. Norman Stamper; and (ii) Thomas Stack (Ex. A).  On October 1, 2020, Plaintiff disclosed a third expert: Dr.

Kimberly Hassell.  Mr. Stack is a former Detective with the Montgomery County Police Department.  (Ex. A.)  Mr. Stack intends to opine on: (i) the Proper and Best Practices for Human Trafficking Police Work; (ii) the Diligence and Patience Needed for Human Trafficking; and (iii) Building a Human Trafficking Database is Important.  (Id.)

The City noticed Mr. Stack's deposition with documents.  (Ex. B.)  Mr. Stack's deposition commenced on November 13, 2020.  (Ex. C.)   Mr. Stack has never been deposed or testified as an expert witness in a federal case.  (Ex. C – 24:2-16.)

## II.    LEGAL ARGUMENT

The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation  and is relevant to the task at hand."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  "To determine whether testimony is sufficiently reliable[,] a district court must determine whether it is based on sufficient facts or data, was the product of reliable principles and methods, and whether the expert reliably applied the principles and methods to the facts of the case." Packgen v. Berry Plastics Corp., 847 F.3d 80, 85 (1st Cir. 2017) (alteration to original) (internal quotations omitted).  In additional to being reliable, an expert's testimony must be relevant.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 591-592.  "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."  Ruiz-Troche v. Pepsi Cola of Puerto Rico

Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (internal citation omitted).

Furthermore, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." United States v. Kantengwa, 781 F.3d 545, 561 (1st Cir. 2015) (quoting Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2d Cir. 2013)). The "scope of a Daubert hearing is not limited to an appraisal of an expert's credentials and techniques but also entails an examination of his conclusions to determine whether they flow rationally from the methodology employed." Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012).

### A.  None of Mr. Stack's Testimony is Relevant and His Testimony Can Only Serve an Improper Purpose.

It is unclear why Mr. Stack's testimony is being offered.  This case is an employment dispute, not a police practices case.  How the Boston Police Department is run versus how Plaintiff (or Mr. Stack) believes it *should* be run is irrelevant. Mr. Stack's testimony is almost exclusively limited to his personal experiences in Montgomery County, Maryland and his review of "chat boards."  Mr. Stack has done no research or studies as to how human trafficking units are run in other municipalities.  Nothing about Mr. Stack's testimony is scientific or subject to review – he is an anecdote masquerading as an expert.

In addition, no part of Plaintiff's claims hinge on Mr. Stack's testimony.   The only plausible explanation for Mr. Stack's engagement is to give Plaintiff credibility – to testify that the way Plaintiff wanted to operate the human trafficking unit was better than the way her supervisor, Defendant Hayes, wanted to run the unit.  That

is not the purpose of experts and highly prejudicial. Hoult v. Hoult, 57 F.3d 1, 7 (1st Cir. 1995) ("When an expert witness testifies with respect to the credibility of a victim/witness there is a real danger that jurors will lend too much credence to the expert's evaluation of the victim's credibility, at the expense of their own independent judgment of credibility."); see FRE 403 and 702. "It is the function of the jury alone to evaluate the credibility of a witness." Id. Ironically, Mr. Stack's testimony about how a human trafficking unit should be run is different is how the unit he was in was run. Mr. Stack has no scientific basis to explain why his methods (some of which are proposed because he read about them on chat boards) are better than how the BPD operates. Nothing that Mr. Stack intends to opine is pertinent to the case and he therefore should be excluded.

## B. None of Mr. Stack's Testimony is Scientific.

In order for expert testimony to be admissible, it must be reliable. See FRE 702(c); Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir. 2013) (Federal Rule of Evidence 702 assigns to the district court the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). "Reliability is a flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error rate; and whether the expert's technique has been generally accepted within the relevant industry." Lawes v. CSA Architects & Engineers LLP, 963 F.3d 72, 98 (1st Cir. 2020) (citing Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 14 (1st Cir. 2011) "At

the end of the day, however, '[t]he focus ... must be solely on principles and

methodology[.]'" Id. (Alteration in original) (quoting Daubert, 509 U.S. at 594-95).

"If perscrutation reveals 'that there is simply too great an analytical gap between

the data and the opinion proffered,' the expert's testimony should be excluded.

Samaan v. St. Joseph Hosp., 670 F.3d at 32 (citing Gen. Elec. Co. v. Joiner, 522 U.S.

136, 146, (1997).

There is nothing scientific about Mr. Stack's testimony.  He has been engaged

to testify as to how he did things but not any scientific research or data.  There are

no studies or scientific data that is subject to review.  Mr. Stack admitted that he

has never studied the best practices in the area of human trafficking.

> Q. Have you done any studies on what's the best practice?
> A. I have not.
> Q. Have you participated in any studies?
> A. Just some of those roundtables I've sat in on through the
> Department of Justice.
> Q. So you've had discussions?
> A. With other -- yes, at roundtables.
> [...]
> Q.But I'm asking you a little different question. I'm asking whether or
> not you participate in any studies to see what's more effective?
> A. I have not.
> Q. Have you -- have you gone into any other departments and done an
> analysis of their -- how they run their departments, their human
> trafficking units?
> C.     No, I'm not -- no, I have not.
> Q. So all of your experience is based on what you've done in
> Montgomery County and Maryland?
> A. Yes --
> A. -- primarily Montgomery Yes. It's, you know, my experience in
> Montgomery County, but also I've worked closely with other human
> trafficking units in the state of Maryland.
> (Ex. C – 63:24-65:19.)

Q. Have you done any studies to see if this is the best way to -- to do human trafficking work?
A. I have not done any studies.
(Ex. C - 82:10-12.)

There is no way to scrutinize Mr. Stack's work because there is nothing scientific about Mr. Stack or his methods.  Accordingly, he must be excluded from testifying.

### D.      Mr. Stack Cannot Testify on "Pimp Lists."

Mr. Stack intends to opine that there is no top 10 pimp list.  (Ex. A at 2.) Under cross-examination, Mr. Stack admitted that he has never looked to see if any police departments have such a list.

Q. Do you know if they have a top-10 pimp list in New York?
A. I've never heard of one.
Q. That's not my question.
A. No.
Q. You're not aware?
A. No.
Q. What about Chicago? Are you aware whether or not they maintain a list?
A. I do not know.
Q. Akron, Ohio? Does Akron have a pimp list?
A. I do not know.
Q. The only place you're aware that they might have a list is Las Vegas, Nevada?
A. Possibly. That's the only place I personally think that they could possibly have one. I do not know that they do have one. I could find out
(Ex C – 92:-9-93:1.)

It is clear that Mr. Stack is speculating on the topic using his anecdotal experience, which he is not permitted to do.  Mr. Stack has not conducted any research on the topic or examined any other departments to opine on the issue. Accordingly, any testimony concerning pimp lists must be excluded.

### E.   Mr. Stack Cannot Testify that Focusing on the Demand Side of Trafficking is Important.

Mr. Stack intends to testify that a police department needs to focus on the demand side of trafficking, such as setting up "John stings."  (Ex. A at 2.)  Under cross-examination, Mr. Stack admitted that he has never done any research on the issue.

> Q. Have you done any studies to see whether or not publicizing an arrest is effective as a deterrent?
> A. I have not.
> Q. Have you seen any studies?
> A. I've read a --
> A. -- couple of studies. I don't remember exactly what their -- what the outcome was.

(Ex. C – 96:1-8.)  Interestingly, Mr. Stack testified that he has has never been involved in publicizing arrests and that the basis for his "expert opinion" is anecdots "from other people" "on the chat boards."

> Q. So how many times did -- were you involved in arrests that were publicized?
> A. We didn't -- when I was in Montgomery County, we didn't publicize arrests.
> Q. You did not?
> A. No.
> Q. So have you ever been in a -- involved in a police operation that publicizes the arrest of johns?
> A. Not personally involved in it, no.
> Q. So your basis for saying that these are important, that's -- that's based on secondhand information that you received from other people?
> A. I guess you could look at it that way.
> Q. Well, you've never been involved in publicizing an arrest of a john; correct?
> A. I have not.
> Q. And so you've -- sitting here today, you haven't seen in your cases the effects that publicizing an arrest might have?
> A. Just the -- just what I've seen what's on the chat boards and just talking with other people.
> Q. And those were other people's arrests?
> A. Correct.

(Ex. C – 96:16-97:16.)  "An expert's testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced." Jones ex rel. U.S. v. Mass. Gen. Hosp., 780 F.3d 479, 494 (1st Cir. 2015); see United States v. Kantengwa, 781 F.3d at 561.  "An expert may rely on hearsay evidence under Fed. R. Evid. 703 provided that he 'form[s] his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials.'" Trustees of Bos. Univ. v. Everlight Elecs. Co., 141 F. Supp. 3d 147, 148–49 (D. Mass. 2015) (quoting United States v. Mejia, 545 F.3d 179, 197 (2d Cir.2008) (alteration in original).  Mr. Stack is being used for the purpose of bringing inadmissible "chat board" hearsay to the case and that testimony must be excluded.

### F.   Mr. Stack Cannot Testify About the Diligence and Patience Needed for Human Trafficking.

Mr. Stack intends to testify that "Human Trafficking investigations take diligence and patience so you can connect the investigative dots." (Ex. A at 3.) Under cross-examination, Mr. Stack admitted that he has never done any research on the issue and that he is simply relying on one anecdotal case he worked in.

> Q. But I'm asking more generally, because I am reading this paragraph and there's only two sentences that don't relate to Jerms, and that's spelled J-E-R-M-S.
> A. And that's how he spelled it.
> Q. I'm giving it to the court reporter. That's why I did that.
> A. Oh, I'm sorry.
> Q. So it says "Human trafficking investigations take diligence and patience so you can connect the investigative dots. The good ones that yield long sentences take time." Right?
> A. Yes.
> Q. And is there anything else in that paragraph that does not relate to Jerms?
> A. I'm just using that as an example of a case that takes a long time and the sentence you'll get out of it.

Q. Right. So -- so my question's a -- Aren't those two first sentences --
don't they apply to any investigation?
A. It could apply to just about any investigation, but, you know, when
it comes to human trafficking, you know, you definitely need to be
patient, especially if you're doing a federal investigation.
(Ex. C – 100:1-101:24.)

Q. Have you done any studies to see how time affects the number of
arrests?
A. I'm sorry, can you rephrase?
Q. Sure. You mention that you need patience and that good -- that good
ones that yield long sentences take a long time, the investigations.
A. I have not done a study on that.
Q. Okay. Have you done a study to see how the time of the
investigation might impact sentencing?
A. No, I have not.
(Ex. C – 104:1-10.)

Mr. Stack has no foundational basis for his testimony.  His testimony rested

on one anecdotal arrest of a man named "Jerms."  Mr. Stack has no scientific basis

or even personal basis for his testimony.  Mr. Stack's testimony on this topic must

be excluded.

**G.     Mr. Stack Cannot Testify About Creating a Database.**

Mr. Stack intends to opine that building a human tracking database is

important.  The entirety of Mr. Stack's testimony, as contained in his expert

disclosure is:

Building a Human Tracking database is important.  The database
must include a lot of different information so that dots can be
connected.  The information that Det Stack would include in a
database consist of, among other things, the trafficker's name, address,
vehicle, the data about crimes committed, and sentencing data, as well
as the victims' name, address and vehicle.

The is no foundational basis concerning for Mr. Stack's testimony - basically,

he thinks it's a good idea for there to be a "database."

9

Q. Section 3: "Building a human trafficking database is important."
Do you have an understanding of whether or not the City has a human
trafficking database? And by "City," I mean City of Boston.
A. I do not know if they have one or not.
Q. Have you ever trained on building a human trafficking database?
A. No, I have not.
(Ex. C – 106:17-107:1.)

Q. Are you suggesting that the City of Boston needs to build its own
database for the country?
A. No.
Q. I'm just trying to understand why -- why this is in the report. This is --
this isn't a topic you've opined upon in the past, has it?
A. No.
Q. You've never given expert testimony on human trafficking databases;
right?
A. No.
Q. But do you think the City of Boston needs a human trafficking database?
A. I think it would be a -- it would be effective.
Q. Do you have any studies on the efficacy of a human trafficking database?
A. No.
Q. So this is a hypothetical database that you think this City should
implement?
A. I think it would be -- it would -- yes, it would assist with other detectives,
especially, you know, if it was -- you know, maybe even a regional database
within, you know, the different regions, you know, different outskirts of
Boston, to have a database to get into and see what traffickers are doing
outside, because you might have somebody that's just outside
the City of Boston.
(Ex C – 110:23-112:4.)

Q. How do you reach the conclusion the City should have a human trafficking
database?
[…]
Q. I think you said it would be a good idea to have one; correct?
A. Yeah, in my opinion it would strengthen -- it would strengthen the human
trafficking cases in the Boston area.
Q. And how do you reach that conclusion?
A. Just by networking and sharing information, it's – I just -- it's worked for
me in the past.
(Ex. C - 113:2-14.)

Mr. Stack has no training or expertise in databases and no basis for testifying on

the topic.  Nothing Mr. Stack is testifying on is based on scientific principles.

Therefore, Mr. Stack's testimony on databases must be excluded.

## III.   CONCLUSION

For the reasons set forth herein, Defendants respectfully requests that the Court exclude or limit the testimony and opinion of Thomas Stack.

Dated: September 15, 2021

Respectfully submitted:

CITY OF BOSTON

By its attorneys:

HENRY C. LUTHIN
Corporation Counsel

*/s/ Nieve Anjomi*
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
Nieve Anjomi (BBO#651212)
Assistant Corporation Counsel
City of Boston Law Department
Boston, MA 02201
(617) 635-4034
Erika.Reis@boston.gov
Nieve.Anjomi@boston.gov

## CERTIFICATE OF SERVICE

I, Nieve Anjomi, hereby certify that a true copy of the above document will be served upon all parties of record via this court's electronic filing system and upon any non-registered participants via first class mail on the date listed below.

Dated:  September 15, 2021

/s/ Nieve Anjomi
Nieve Anjomi