## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 1:18-cv-10819**

**DONNA GAVIN,**
          **Plaintiff,**

**v.**

**BOSTON POLICE DEPARTMENT
and MARK HAYES**
          **Defendants.**

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE, OR LIMIT, THE TESTIMONY OF KIMBERLY HASSELL

---

Now comes the Defendant Boston Police Department who hereby moves *in limine* to exclude or limit the testimony of Dr. Kimberly Hassell: (i) Dr. Hassell is not qualified to testify on the topics on which she intends to testify; (ii)  Dr. Hassell is not providing expert testimony but is being used for the purpose of bringing in inadmissible hearsay; (iii) Plaintiff and Dr. Hassell failed to provide the documents required under Fed. R. Civ. P. 26 claiming that her research is "confidential;" (iv) the expert witness's anticipated testimony is not based on sufficient facts or data, nor are the opinions the product of reliable principles; (v) Dr. Hassell's supplemental disclosure was untimely; and (vi) Dr. Hassell's testimony is for an improper purpose and unfairly  prejudices the Defendants.

In short, Dr. Hassell is being used to admit into evidence: (i) the irrelevant anecdotal experiences of others; and (i) the studies of others scholars who would not be subject to cross-examination – such that there would be no way for the Defendants to question, test, or challenge the reliability of their data.  That is not

the purpose of an expert and Dr. Hassell must be excluded.

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiff is a Lieutenant Detective in the Boston Police Department ("BPD"). She has sued BPD and her former captain, Mark Hayes, alleging various violations of Title VII and M.G.L. ch. 151B, § 4, including discrimination on the basis of gender, hostile work environment, and retaliation. (See ECF No. 80.)

The Court ordered Plaintiff to disclose her experts by December 13, 2019. Plaintiff requested several extensions of time to disclose her experts and was ultimately required to disclose her experts by October 1, 2020. (ECF No. 104.) Plaintiff disclosed two experts on September 11, 2020: (i) Dr. Norman Stamper; and (ii) Thomas Stack. On October 1, 2020, Plaintiff disclosed a third expert: Dr. Kimberly Hassell. (Ex. A.) Dr. Hassell is a professor at the University of Wisconsin-Milwaukee who earned her Ph.D. in Criminal Justice. (Id.) She has conducted research related to several police departments, including Madison Police Department, Milwaukee Police Department, and Colorado Springs. (Id.) None of the research Dr. Hassell conducted specifically relate to discretion or retaliation in the workplace. (Id.)

Dr. Hassell's opinions are: (i) "Policing is a hypermasculine occupation and female police officers working in police departments routinely face negative workplace experiences;" (ii) "Retaliation is a frequent occurrence within police departments when officers report misconduct of other officers [and] female police officers disproportionately experience retaliation;" (iii) "Police officers and

administrators can sabotage a subordinates career by filing internal complaints of misconduct;" and (iv) "As presented by Detective Lieutenant (sic) Gavin; Detective Captain (sic) Mark Hayes […] engaged in discriminatory and retaliatory actions against her."

The City noticed Dr. Hassell's deposition with documents.  (Ex. B.)  Dr. Hassell's deposition commenced on December 11, 2020.  (Ex. C.)

On the same day as her deposition, December 11, 2020, Plaintiff provided a supplement to Dr. Hassell's report (the "Supplement").  (Ex. D.)  The Supplement is a summary of  a dissertation done by Lisa M. Barao.[1]

## II.   LEGAL ARGUMENT

The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  "To determine whether testimony is sufficiently reliable[,] a district court must determine whether it is based on sufficient facts or data, was the product of reliable principles and methods, and whether the expert reliably applied the principles and methods to the facts of the case." Packgen v. Berry Plastics Corp., 847 F.3d 80, 85 (1st Cir. 2017) (alteration to original) (internal quotations omitted).  In additional to being reliable, an expert's testimony must be relevant.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 591-592.  "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that

---

[1] In Dr. Hassell's deposition transcript, Barao is spelled Bareo.

the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (internal citation omitted).

Furthermore, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." United States v. Kantengwa, 781 F.3d 545, 561 (1st Cir. 2015) (quoting Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2d Cir. 2013)). The "scope of a Daubert hearing is not limited to an appraisal of an expert's credentials and techniques but also entails an examination of his conclusions to determine whether they flow rationally from the methodology employed." Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012).

A.      **Dr. Hassell is Not an Expert and She is Not Providing Expert Testimony.**

Dr. Hassell may have a Doctor of Philosophy degree in criminal justice but she is not an expert.  Dr. Hassell has never been engaged as an expert before or provided expert testimony either at deposition or trial. (Ex. C - 4:20-5:1, 9:23-10-2.) Dr. Hassell has never been identified as expert before or qualified by any court. (Hassell 164:10-21.)

As stated in her report, Dr. Hassell intends to opine: (i) policing is a predominately male profession where females are "routinely" mistreated, ergo, Plaintiff was mistreated; (ii) police officers retaliate against one another and female officers are retaliated against more frequently, ergo, Plaintiff was retaliated against; and (iii) internal complaints of misconduct can sabotage an officer's career,

ergo, Plaintiff's career was sabotaged by Defendant Hayes's internal complaint.

While the foundational issues are discussed in greater depth below, the purpose of Dr. Hassell's testimony is backdoor hearsay and propensity evidence[2] – both of which are inadmissible.  See FRE 404, 802.  Dr. Hassell's testimony does not assist the trier of fact in determining whether Plaintiff was discriminated or retaliated against by the Defendants based on the facts in this case relevant to Plaintiff's claims – it is speculation, inuendo, and hearsay in lieu of evidence.

### 1.    Dr. Hassell is not providing expert testimony.

The overarching theme of Dr. Hassell's testimony is that Plaintiff must have been the victim of discrimination, harassment or retaliation because her experiences (as alleged in the Complaint) are consistent with the experiences of others who have participated in studies – that is not the purpose of expert testimony.  She repeatedly provided the same canned answer in response to questions concerning the basis for her opinion:

> Q. Is the conclusion it must have happened to Lieutenant Detective Gavin because there's research that reflects that this stuff happened?
> A. The facts as outlined in the Complaint are consistent with and there are commonalities between her  experiences and a large body of scholarship on women's experiences in policing and Doctor Bareo's in-depth study of female officers within the Boston police department and my own experience working with police departments, in particular the Milwaukee police department. (Ex. C – 81:2-13.)

> Q. Your opinion is that because Donna Gavin filed a complaint, her alleged experiences of retaliation are consistent with what other people experienced from when they filed a complaint?
> A. The facts as outlined in the Complaint are consistent with empirical

---

[2] The propensity evidence relates to police departments as whole, not specific actions taken by the Boston Police Department.

research, scholarly research and Doctor Bareo's dissertation based on
research of female officers' experiences within the Boston police department
and my experiences working with police departments.
(Ex. C. - 102:25-103:14)

Q. You're not suggesting that someone specifically manipulated something,
but Lieutenant Detective Gavin's experiences are consistent with the
research data --
A. As outlined in the opinion, I believe that's an allegation within her
Complaint. And those allegations, those experiences as detailed in the
opinion are consistent with this body of research and scholarship. So they are
commonalities.
Q. Is the suggestion that Donna Gavin said this happened and therefore her
experiences are consistent with this research and therefore it must have
happened or was more likely than not that it happened?
A. I'm not an attorney. And my role is to provide an opinion based on
empirical research. That's what I provided here. And what I'm saying based
on the empirical research is that her experiences are consistent and there are
commonalities with a growing body of research.
(Ex. C – 124:14-22.)

Q. Do you have any evidence that Captain Mark Hayes influenced any
investigation?
A. The information I have is detailed in the opinion. There are allegations
and it's consistent with the empirical research that I have provided here.
(Ex. C – 130:23-131:3.)

It is clear that Dr. Hassell has nothing to offer a jury. Dr. Hassell concludes that

Plaintiff's "experiences" are similar to the experiences of others. That is not the

purpose of an expert and Dr. Hassell certainly does not assist the trier of fact.

Foundationally, Dr. Hassell has no competent testimony to base her opinion on –

she concedes that her entire understanding of the case is Plaintiff's unverified

complaint – which is not admissible. Dr Hassell elected not to reviewed transcripts

or any other evidence which may be admissible. Moreover, it is clear from Dr.

Hassell's testimony that she wants the jury to speculate (without any evidence) that

there were behind the scenes misconduct because that would be consistent with the

experiences of others whose research she has reviewed. Dr. Hassell cannot be offered as a substitute for competent evidence to address evidentiary gaps that exist in Plaintiff's case.

### 2.      Dr. Hassell is a conduit for inadmissible hearsay.

"An expert's testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced." Jones ex rel. U.S. v. Mass. Gen. Hosp., 780 F.3d 479, 494 (1st Cir. 2015); see United States v. Kantengwa, 781 F.3d at 561. "An expert may rely on hearsay evidence under Fed. R. Evid. 703 provided that he 'form[s] his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials.'" Trustees of Bos. Univ. v. Everlight Elecs. Co., 141 F. Supp. 3d 147, 148–49 (D. Mass. 2015) (quoting United States v. Mejia, 545 F.3d 179, 197 (2d Cir.2008) (alteration in original). Dr. Hassell is being used for the purpose of bringing inadmissible hearsay to the case. The cornerstone of Dr. Hassell's testimony is that she read someone else's study and Plaintiff's experiences are similar to those that were noted in the study. None of Dr. Hassell's opinions are "expert" or admissible. Accordingly, Dr. Hassell must be precluded from testifying.

### B.      Dr. Hassell's Research is Not Reliable.

In order for expert testimony to be admissible, it must be reliable. See FRE 702(c); Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir. 2013) (Federal Rule of Evidence 702 assigns to the district court the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). "Reliability is a

flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error rate; and whether the expert's technique has been generally accepted within the relevant industry." Lawes v. CSA Architects & Engineers LLP, 963 F.3d 72, 98 (1st Cir. 2020) (citing Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 14 (1st Cir. 2011) "At the end of the day, however, '[t]he focus ... must be solely on principles and methodology[.]'" Id. (Alteration in original) (quoting Daubert, 509 U.S. at 594-95). "If perscrutation reveals 'that there is simply too great an analytical gap between the data and the opinion proffered,' the expert's testimony should be excluded. Samaan v. St. Joseph Hosp., 670 F.3d at 32 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, (1997).  The Court cannot scrutinize Dr. Hassell's work because it is hidden and she will not subject it to scrutiny.  In its deposition notice, the City requested that Dr. Hassell provide the materials she was relying on in support of her opinions. Dr. Hassell refused to provide her data for review, instead referring to the data as "confidential."

> Q. Where are the source documents for that study?
> A. I'm sorry?
> Q. The underlying documents related to the the survey, the statistical analysis?
> A.  It's in the paper -- the actual data are not in the article. The data are confidential
> (Ex. C - 23:17-22.)
>
> Q. Is it fair for me to assume you did not provide the underlying source material you relied upon in reaching the conclusion for that study?
> A. By underlying source material you mean?
> Q. Your survey results, your interviews?

8

A. The rawdata?
Q.  Yes.
A. No, we do not provide raw data.
(Ex. C - 38:1-8)

Because Plaintiff has failed to provide the data upon which her expert relies, it is

impossible to ascertain whether the expert's opinions are based on sufficient

facts or data or the product of reliable principles. It would be impossible to judge

the accuracy of Dr. Hassell's conclusions without access to the underlying data.

The case law is clear that an expert's "data" must be reliable and subject to

scrutiny.  Dr. Hassell's data is neither.

### C.    Dr. Hassell's Conclusions are Speculative

Dr. Hassell's conclusions are entirely speculative.  Dr. Hassell opines that

Plaintiff's future job prospects have been diminished based on her disciplinary

record. Notwithstanding her conclusion, she has not done any research into

Plaintiff's future job prospects.

Q. Have you done a study of what positions Lieutenant Detective Gavin
would be qualified for after retiring?
A. I have not done any empirical research. Based on my experiences knowing
members of the Milwaukee police department command staff, knowing what
jobs some of them have secured following retirement. But I haven't conducted
empirical research.
(Ex. C - 147:16-23)

Q. The rest of that sentence, "And calls into serious question Lieutenant
Detective Gavin's future employability." Have you, yourself, done any
research into her future employability?
A. I have not conducted any research into Lieutenant Detective Gavin's
employability.
(Ex. C - 149:6-12)

Q. Have you done any statistical analysis to see what the probabilities are
that her career will be impacted as a result of this lawsuit?

A. I have not performed any statistical analyses.
(Ex. C - 149:16-19)

Q. Have you done any analysis to determine how much she will be impacted
financially?
A. I myself have not conducted any statistical analysis on that.
(Ex. C -150:5-7.)

Q. The next sentence. "Based on empirical research presented and discussed
above, my opinion is that Lieutenant Detective Gavin will face
insurmountable obstacles in securing comparable policing/law enforcement,
corporate and/or protean bridge career employment as a result of her
negative workplace experiences." Have you done any research on these
issues?
A. I presented an entire report that supports this conclusion and this opinion.
The facts as outlined in the Complaint, the 247 or so studies, sources that I
document, consistent with Doctor Bareo's dissertation, and my experiences
working with police departments, in particular the Milwaukee police
department. All the research that I presented builds to this conclusion.
Q. But you, yourself, haven't done a study that
reaches that conclusion?
A. I have not conducted a study.

(Ex. C - 150:20-151:13.)  An expert is not permitted to speculate on damages simply

because the damages are in the "realm of possible harm."  Smith v. Jenkins, 732

F.3d at 68 (citing Donovan v. Philip Morris USA, Inc., 914 N.E.2d 891, 899 (2009)

(Plaintiff is not entitled to damages that possibly may follow the injury which he

has suffered).  Dr. Hassell has not done any studies or research to support her

conclusions – substituting her anecdotal "experiences knowing members of the

Milwaukee police department command staff."  Dr. Hassell's personal relationships

with members of the Milwaukee police department are irrelevant to this case and

Dr. Hassell's testimony must be excluded because it is speculative.

**D.    Dr. Hassell's Research is Irrelevant**

With the exception of Barao's report, none of the research Dr. Hassell

10

reviewed relate to BPD.

> Q. What studies in your report actually involve the Boston police
> department? Obviously there's the Bareo report. What other studies did you
> rely upon that involved the Boston police department?
> A. I cited articles that -- where I reference Boston, I've cited law review
> article, peer reviewed articles. Most of the empirical research that I've
> cited are not studies that have been conducted with the Boston police
> department.
> Q. That's my question.
> A. I understand.
> Q. What has been cited by you in support of your opinion that actually did
> involve the Boston police department? Any articles, studies, peer reviewed
> articles on which you relied?
> A. To my knowledge, Doctor Bareo's dissertation is the only empirical
> examination of the workplace experiences of female officers within the Boston
> police department.
> (Ex. C - 173:4-24.)

All of the other articles cited by Dr. Hassell that relate to BPD (and there are only a

few), relate to anecdotal experiences and **<u>none</u>** relate to gender discrimination and

retaliation.  (Ex C - 174:1-177:24.) Even more bizarre, Dr. Hassell intends to testify

about google searches that she has performed and the websites she visited. (Ex. C –

152:19-153:20.)  Dr. Hassell acknowledged that she was unfamiliar with, and could

not testify about, some of the websites that she included in her report.  (<u>Id.</u>)

Plaintiff is not permitted to engage an expert for the purpose of backdooring in

other individual's anecdotal experiences with BPD – none of which are even related

to the type of claim being advanced by Plaintiff – or google searches.  The anecdotal

experiences would be inadmissible in and of themselves.  Plaintiff has compounded

the issue by seeking to admit inadmissible hearsay on inadmissible topics and to

deprive the City of any ability to cross-examination by using a purported expert.

### E.    Dr. Hassell is Not Permitted to Testify on Dr. Barao's Research.

#### 1.    Dr. Hassell's supplemental report was untimely.

Plaintiff was required to provide her expert report by October 1, 2020.  On December 11, 2020, the same day as Dr. Hassell's deposition, Plaintiff provided a "supplemental" report by Dr. Hassell.  Plaintiff did not seek leave of court for the supplemental report or demonstrate any good cause for the supplementation.   Dr. Hassell admitted at her deposition that she had first learned of Barao's report days before her deposition - presumably because Plaintiff's counsel directed her attention to the report.

> Q. When did you first receive Doctor Bareo's dissertation?
> A. I don't remember the exact date. I would say approximately a few days ago, but I don't recall the exact date.
> Q. Had you ever seen Doctor Bareo's dissertation before a few days ago?
> A. No
> (Ex C – 16:22.)

#### 2.    Dr. Hassell has no basis to testify on the matters contained within the supplemental report.

> Q. Is there any opinion contained in the supplemental report that wasn't already in the first report?
> A. I do not provide an opinion. I personally would not call this a supplemental report. It's a brief overview of a dissertation over 250 pages. I provided a brief overview as it pertains to my report. This study is consistent with the empirical research that I cite in this report, and it's significant because this is a study that focuses specifically on the Boston police department. Its findings are consistent with the findings I produced in my report, but I do not include an explicit opinion.

(Ex. C – 179:14-24.)  Dr. Hassell's testimony says it all.  Days before her deposition, she was provided Dr. Barao's report and Dr. Hassell created a document called "supplemental report." The Supplement acknowledges that Dr. Hassell did not rely

on Dr. Barao's report in reaching her conclusion but that Barao's report is extrinsic evidence that is consistent with her findings. (Ex. D) ("My review of this dissertation does not change the expert testimony contained in my report; however, it does further support the opinion which I have already included in Section I of my report.")  The evidentiary rules do not permit such testimony - a party is not permitted to use one expert to backdoor the opinion of another expert.  See In re Intuniv Antitrust Litig., No. 1:16-CV-12396-ADB, 2020 WL 5995326, at *10 (D. Mass. Oct. 9, 2020) ("Klibanov would be testifying as to the opinions of another expert, who would be unavailable for cross-examination. Klibanov's testimony as to commercial success must therefore be excluded."); Carrozza v. CVS Pharmacy, Inc., 391 F. Supp. 3d 136, 145 (D. Mass. 2019), aff'd, 992 F.3d 44 (1st Cir. 2021).

Also problematic is that Dr. Hassell has no foundational basis to opine on Dr. Barao's report.   Dr. Hassell was not involvement in the study and only has a *general* understanding of how the study was performed.

> Q. Were you involved in Doctor Bareo's study?
> A. I was not.
> Q. Do you know how she performed her study?
> A. I have read through her dissertation, so I have a general idea as written in her dissertation.
> Q. But you have never seen any of her source material?
> A. By source material, you mean?
> Q. Her surveys, her underlying statistical data?
> A. I've only reviewed the dissertation, what's provided in the dissertation.
> (Ex. C – 12:24-13:10)
>
> Q. Did you review any qualitative data underlying Doctor Bareo's report?
> A. I read her dissertation. That's all I reviewed.

(Ex C -185:9-12.)  When pressed about the data within the report, Dr. Hassell

13

repeatedly refused to provide an answer, asserting that she "would have to go back

through and read it in order to be able to give you an accurate answer."  (Ex. C -

185:16-186:14.)  Dr. Hassell also conceded that the Supplement changed some of the

language used by Barao in her report based on Dr. Hassell's conclusions about the

report.  (Ex. C - 187:14-20.) This issue is highly problematic in this case, as Dr.

Barao acknowledges that her results may be inaccurate due to the small sample

size. See BARAO 213 ("It is therefore possible that that these small sample sizes may

diminish the reliability of results."). Dr. Barao admits that her failure to interview

male officers limited her ability to draw general conclusions: "Though male

applicants and recruits participated in surveys, no male officers were interviewed

for this project. Therefore, it is not possible to compare how strongly the experiences

of current female officers diverge from those of male officers. Additionally, it is not

possible to confirm whether male officers actually view women as outsiders or

consciously subscribe to the belief that policing is a man's job." See id. at 214–25.

Dr. Hassell never reviewed the underlying source materials and could not

independently corroborate the data in the report.  Therefore, any aspect of Dr.

Hassell's testimony as it relates to Dr. Barao is hearsay, that lacks foundation, and

that would not be subject to cross-examination.  Therefore, any reference to Dr.

Barao must be excluded.

**F.    Plaintiff's Conduct Prejudices the Defendants.**

The real purpose for Dr. Hassell engagement is to act as a credibility expert –

to provide testimony that what has happened to Plaintiff happens to others in police

department settings, therefore, it must have happened to the Plaintiff. That is not the purpose of experts and highly prejudicial. <u>Hoult v. Hoult</u>, 57 F.3d 1, 7 (1st Cir. 1995) ("When an expert witness testifies with respect to the credibility of a victim/witness there is a real danger that jurors will lend too much credence to the expert's evaluation of the victim's credibility, at the expense of their own independent judgment of credibility."); FRE 403 and 702. "It is the function of the jury alone to evaluate the credibility of a witness." <u>Id.</u>  Because there is not genuine purpose for Dr. Hassell's testimony other than to give credence to Plaintiff's claims, she must be excluded from testifying.

## III.   CONCLUSION

For the reasons set forth herein, Defendants respectfully requests that the Court exclude or limit the testimony and opinion of Dr. Kimberly Hassell.

Dated: September 15, 2021                Respectfully submitted:

CITY OF BOSTON

By its attorneys:

HENRY C. LUTHIN
Corporation Counsel

*/s/ Nieve Anjomi*
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
Nieve Anjomi (BBO#651212)
Senior Assistant Corporation Counsel
City of Boston Law Department
Boston, MA 02201
(617) 635-4034
Erika.Reis@boston.gov
Nieve.Anjomi@boston.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Nieve Anjomi, hereby certify that a true copy of the above document will be served upon all parties of record via this court's electronic filing system and upon any non-registered participants via first class mail on the date listed below.

Dated:  September 15, 2021                    <u>/s/ Nieve Anjomi</u>
                                                            Nieve Anjomi