UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA GAVIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 1:18-cv-10819-LTS |
| v. | ) |
| | ) |
| CITY OF BOSTON and MARK HAYES | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF DONNA GAVIN'S MOTION TO COMPEL DETECTIVE GERO'S RECORD CONCERNING HIS TRANSFER OUT OF THE SPECIAL INVESTIGATIONS UNIT AND TO THE DOMESTIC VIOLENCE UNIT**

Plaintiff Donna Gavin ("Gavin") requests that the Court compel Defendant City of Boston ("City") to disclose the reason for Detective Jarrod Gero's ("Gero") transfer from the Special Investigations Unit ("SIU") to the Domestic Violence Unit ("DVU") only 18 months after he was transferred out of the Human Trafficking Unit ("HTU"). The City has refused to provide this information either from its Rule 30(b)(6) witness or from Gero. Gavin should be allowed this information to counterbalance the false portrait of Gero that the City and Defendant Mark Hayes ("Hayes")(collectively "Defendants") have consistently painted of him as a super cop who was "a threat" to Gavin. Defendants undoubtedly will continue this false tale at trial to explain the hostile and discriminatory treatment by Hayes and the Boston Police Department as probing "deficiencies" that Gero had "exposed."[1]

---

[1] Indeed, Defendants have listed on their proposed exhibit lists many documents that focus on Gero. Of course, they only offer ones where he is portrayed in a positive light, such as an email where his work on one investigation is praised or details of his work on another investigation.

This case is not about Gero, but if Defendants are going to promote Gero as the model human trafficking officer and a "threat" to Gavin, then Gavin needs to be able to show the full picture about Gero which includes significantly negative performance that resulted in an effective demotion from the elite Special Investigations Unit to the high volume, low prestige Domestic Violence Unit.  When Gero arrived at HTU, he was a newly sworn detective, who had no HTU experience, refused to take the mandatory training on the complexities of sexual assault investigations, and refused to listen to and learn from Gavin, who the City's own 30(b)(6) witness described as "an expert" on human trafficking investigations and law enforcement.  Gavin should be allowed to find out why Gero was transferred from the SIU, because it appears to have been involuntary for gross misconduct in the line of duty.  That would badly damage the super cop veneer, which is why the City has refused to provide this information.  They should be compelled to provide this information prior to trial.

## Factual and Procedural Background

In his fifty-page log on Gavin, Hayes described Gero as the best detective to have ever served in HTU, and had "exposed some serious deficiencies" in the HTU while under Gavin's command and that he was "a threat" to Gavin.  *See* Docket No. 117-1, Exhibit A, at pg.4.  For example in his log, Hayes characterizes Gero as follows:

- "Almost immediately from the time Detective Gero was transferred to the HTU, Lt. Det. Gavin has unfairly criticized him and continually made life difficult for Detective Gero."

- "Detective Gero's work product and dedication to duty has been absolutely fantastic.  He has been more productive during his short time in the HTU than any other prior HTU Detective."

- "Detective Gero has investigated, arrested, and indicted more Human Trafficking pimps/suspects, and seized more assets for Human Trafficking crimes, that [sic]

any prior HTU detective did in their first 10 months and perhaps all the other HTU Detective combined."

- "Detective Gero's work performance has exposed some serious deficiencies in the manner in which the HTU has been operating for 7-8 years while under the command of Lt. Det. Gavin…"

- "Detective Gero's productivity, in my opinion, has become a threat to Lt. Det. Gavin."

*See* Docket No. 117-1, Exhibit A, at pg. 4.

Hayes even recommended to Superintendent Gregory Long that Gavin be removed from her command and transferred out of the Family Justice Center ("FJC") after only two months because Hayes stated, without specifics, that she was "harassing" Gero.  *See* Docket No. 117-1, Exhibit A, at pg. 8.

In addition to the commentary in his log, Hayes publicly hailed Gero as the model HTU detective who was outperforming Gavin and the rest of the HTU team singlehandedly.  In a November 5, 2016 email to Gavin and the entire HTU team, which was also copied to Commissioner William Evans and Superintendent Long, Hayes praised Gero and told the rest of the HTU team, "Gero cannot do this work alone."  *See* <u>Exhibit A</u>.[2]  Even Commissioner Evans was troubled by Hayes's email, telling Long: "Wish Mark did not do this.  Y email.  It looks terrible and creates a paper trail."  *See* Docket No. 117-22, filed under seal on February 26, 2021.

After approximately one year in the HTU, he asked to be transferred to the Special Investigations Unit ("SIU") and that transfer was granted.  However, on information and belief, approximately one year after his transfer to SIU, he was involved in an investigation of a woman

---

[2]  The City marked most of the documents it produced in this litigation as "Confidential," including some of the exhibits Gavin seeks to attach by way of this motion.  While Gavin disagrees with the City's designation, she has redacted nearly everything but the sections pertinent to this motion from Exhibits A-D and has redacted all identifying victim information.  Gavin can make this information available for *in camera* inspection if that would assist the Court.

kidnapped from Boston; he disclosed information about the investigation to the media; as a result, the woman's life was endangered because the media ran stories based on the information and the kidnapper presumably became aware that the police might know their whereabouts; and Gero was transferred out of SIU as a result of this major breach of protocol.

This would dovetail with what Gavin observed about Gero.  He was untrained and refused to listen to and be trained by her, though she is a recognized expert in human tracking law enforcement and had over seven years of experience running the HTU.  He violated laws about victim confidentiality.  He treated the important human service providers who help victims transition to productive lives with utter contempt.  And he treated Gavin disrespectfully, repeatedly speaking against her behind her back and even disrespecting her openly before colleagues.  *See* Exhibit B, at COB3881 (Hayes email describing "1 ½ hours" meeting where Gero "informed me that he has about 8-10 potential targets himself that he is ready to work on but he gets resistance from Lt. Gavin. Sgt. [Brian] Miller can also confirm this.  Sgt. Miller and Det. Gero can also explain more details on the top 10 targets and her reluctance to really do that.").   In an email to Gavin on which the rest of the HTU was copied, Gero wrote resorting to all caps: "Is there a breakdown in communication somewhere?  We have emailed and texted numerous times WE ARE BOTH GOING TO THE MEETING AT 2PM TODAY IN ARLINGTON."   His disrespect was so obvious that Gavin had to respond: "Jarrod, I don't appreciate the tone of your email.  Do not respond to me in this manner again."  *See* Exhibit C, at Gavin1322.  Days later, he returned to her the holiday card and gift certificate that she gave each member of her team.  And, in a January 2017 email, he wrote to Gavin sarcastically, with others copied: "Any thing else I can do for an investigation I'm not involved in because I was removed from it, let me know."  *See* Exhibit D.

At his deposition, following the City's attorney's instruction not to answer, Gero refused to respond to questions about why he was transferred from SIU to DVU, whether it was voluntary, whether he disclosed any confidential investigation information, and whether he put a (kidnapped) woman's life in jeopardy due to his poor judgment.  *See* J. Gero Dep., at pp 8-9, attached hereto at Exhibit E.   The City's 30(b)(6) deponent also was instructed not to answer these questions, and he refused to answer them.  *See* Exhibit F, at pp. 240-244.

The City has previously argued to the Court (Bowler, M.J.) that the reason for Gero's transfer from the SIU is irrelevant to this case and his actions at HTU, which the Court (Bowler, M.J.) agreed with in denying Gavin's prior motions to compel this information.  However, this Court (Bowler, M.J.) took a different view and allowed Gavin's motion to compel testimony about the transfers of three others (Sgt. Det. Brian Miller, Sgt. Det Thomas Lembo, and Lt. Det. Mark Harrington) from the Family Justice Center *after* Gavin was transferred out.  The Court agreed that the reason for these transfers might be relevant to issues in this case, namely, Miller and Lembo were direct subordinates of Gavin and Harrington was a fellow Lieutenant Detective in the FJC and if there was evidence they disrespected one woman commander, Deputy Superintendent Sharon Dottin, it would be probative of their treatment of Gavin.  The Court was proven right, because the depositions revealed that they "disrespected" her authority and would not listen to her – a problem that Gavin too had experienced from them, as well as from Hayes and Gero.

## Argument

Gero's transfer from the SIU to the DVU – a demotion in terms of prestige – appears to have been involuntary and as a result of a significant transgression of police standard practices.  If Gero, in fact, was removed involuntarily from the SIU, it would tend to discredit the chorus of praise that Hayes and Sgt. Det. Miller heaped on him and will likely continue to heap on him at

trial, to try to portray Gavin as less capable and even threatened by this 'boy wonder.'  Gavin should be entitled to discover whether Gero was such an extraordinary detective or whether in fact the SIU concluded he was unworthy of working in that unit because of his lack of police skill and poor judgment – things that Gavin too had experienced as his commander.

### **Conclusion**

For these reasons, the Court should order that:

1. The City allow a half hour deposition of Gero and the City's 30(b)(6) witness to answer the following questions that they refused to answer at their depositions:

   a.  Why was Gero transferred from the SIU to the DVU?

   b.  Was Gero transferred voluntarily or involuntarily from the SIU to the DVU?  In other words, did he have the option to remain at the SIU?

   c.  Was Gero disciplined verbally or in writing for his conduct at the SIU?

   d.  What caused that discipline?

2. the City produce as a "confidential" record any document that explains the discipline that Gero received and the reason for it.

3. As an alternative to the half-hour depositions, the Court should order that the City's 30(b)(6) witness provide a sworn statement answering questions a-d above.

Respectfully submitted,

**DONNA GAVIN**

By her attorneys,


/s/ Nicholas Carter
Nicholas B. Carter (BBO#561147)
*ncarter@toddweld.com*
Lucia A. Passanisi (BBO#691189)
*lpassanisi@toddweld.com*
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Dated: September 24, 2021        Tel: (617) 720-2626

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

Undersigned counsel hereby certifies that counsel for Plaintiff, Donna Gavin, and counsel for Defendants, City of Boston and Mark Hayes, have conferred on September 23, 2021, to resolve the issues presented in this Motion.  Opposing counsel have indicated that they will not assent to the relief Plaintiff is seeking in this Motion.

/s/ Nicholas Carter
Nicholas B. Carter, Esq.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.1

Undersigned counsel hereby certifies that counsel for Plaintiff, Donna Gavin, and counsel for Defendants, City of Boston and Mark Hayes, have conferred on September 23, 2021, to resolve the issues presented in this Motion.  Opposing counsel have indicated that they will not assent to the relief Plaintiff is seeking in this Motion.

/s/ Nicholas Carter
Nicholas B. Carter, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2021, a copy of the foregoing was served upon counsel of record through the Court's e-filing system.

/s/ Nicholas Carter
Nicholas B. Carter, Esq.