UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA GAVIN )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF BOSTON and MARK HAYES )<br><br>Defendants. ) | C. A. No. 1:18-cv-10819-LTS |

**PLAINTIFF DONNA GAVIN'S MOTION IN LIMINE
TO PRECLUDE TESTIMONY AND EXHIBITS REGARDING
THE INTERNAL AFFAIRS' REPORTS AND FINDINGS CONCERNING THE PARTIES**

Plaintiff Donna Gavin ("Gavin") moves *in limine* that the Court preclude Defendants City of Boston ("City") and Mark Hayes ("Hayes") (collectively, "Defendants") from introducing evidence – whether testimonial or documentary – related to the investigation, reports and findings of the Internal Affairs Division ("IA") of the Boston Police Department ("BPD") concerning Gavin's IA complaint against Hayes and Hayes's retaliatory complaint against Gavin. This motion is necessary because Defendants seek to introduce evidence concerning the BPD's biased and self-serving IA reports and findings which exonerate Hayes and condemn Gavin for myriad alleged incidents of professional misconduct and dishonesty. The IA reports and findings are based largely on witness interviews and, thus, consist almost entirely of hearsay that is not admissible in this case through any evidentiary exception. Further, these documents are not admissible pursuant to FRE 803(8) because they are not trustworthy. They were prepared in anticipation of litigation after Gavin had both threatened to file and filed her civil discrimination complaint at the Massachusetts Commission Against Discrimination ("MCAD").

Because these documents consist of inadmissible hearsay and are self-serving and biased, designed to exculpate Hayes and the City from any potential liability, this Court should exclude them and any witnesses who might seek to testify about their contents at trial.  The issues raised in the IA reports and findings are at the heart of the pending case before this Court, and the jury should resolve these fact issues based upon a trial where witnesses with personal knowledge may be cross-examined.  Any other result would violate Rule 403.

## I.     Procedural Background

Gavin filed her initial IA Complaint with the BPD on April 24, 2017.  Hayes filed his retaliatory IA Complaint on May 8, 2017.  On May 23, 2017, Gavin commenced a civil claim for discrimination, hostile work environment and retaliation against Defendants at the MCAD.  On or about March 16, 2018, Gavin removed her case from the MCAD and filed her Complaint against Defendants in Massachusetts Superior Court.  Defendants then removed the state case to this Court on April 27, 2018.

The BPD IA Division conducted their investigation of the IA Complaints over a period of nearly two years after the Complaints were filed.  The investigative interviews began on or about May 31, 2017 and continued intermittently through the end of that year – approximately seven months.  The IA did not conclude its investigation until in or about September-October 2018, when Lieutenant Detective Adrian Troy issued the IA reports to Deputy Superintendent Jeffrey Walcott. *See* COB10868-10893 (September 18, 2018 findings based on complaint against Hayes), COB10826-10865 (October 16, 2018 findings based on complaint against Gavin).[1]  The BPD did

---

[1]  These reports followed preliminary reports with alleged factual findings by Sergeant Detective Richard Dahill of Internal Affairs which he completed on May 15, 2018, concerning the complaint against Hayes (COB9676-10088) and August 21, 2018, concerning the complaint against Gavin (COB9279-9674).  Defendants do not seek to introduce the underlying alleged factual findings by Dahill on which the reports and findings they do seek to admit are based.  This puts in doubt

not make final findings until on or about July 2, 2019, when the BPD Commissioner endorsed the recommendations of Deputy Superintendent Jeffrey Walcott.  *See* COB9675, COB10866-10867.

On Friday, September 17, 2021, Defendants included in their proposed trial exhibit lists the following documents which constitute the IA reports and findings at issue here:  COB10824-10825,  COB10826-10865,  COB9278,  COB10866-10867,  COB10868-10893,  COB9675, COB4481.

On the same date, Defendants also included the following individual BPD officers on their proposed trial witness list for the likely purpose of testifying about the IA investigation, report and findings:  Adrian Troy, Jeffrey Walcott, and Commissioner William Gross.

## II.      <u>Argument</u>

The IA reports and findings are inadmissible for two fundamental reasons:  they consist primarily, if not exclusively, of hearsay; and they are not admissible pursuant to Rule 803(8) because they are untrustworthy as they were prepared without procedural safeguards and in anticipation of trial by biased BPD officers with a motive to insulate the BPD and City from liability in the pending civil litigation brought by Gavin.   Finally, the records are also not admissible as 'business records' pursuant to Rule 803(6).

1.   <u>The IA reports and findings consist of inadmissible hearsay</u>.

It is well-established that hearsay within police reports is inadmissible.   *See Damon v Hukowicz*, 964. F. Supp.2d 120, 126 n.2 (D. Mass. 2013); *Nna v. American Standard, Inc.,* 630 F.Supp.2d 115, 125 (D.Mass.2009); *Barth v. City of Peabody*, 2019 WL 2525475, *3 n.9 (D. Mass. 2019) (excluding witness statements in police investigative report as hearsay).

---

whether there is even a proper foundation for the admission of the IA reports and findings.  Plaintiff can make the referenced IA documents available for *in camera* inspection for the Court.

Further, while the IA reports do not constitute admissible governmental reports pursuant to Rule 803(8), as discussed below, that rule still would not allow for the admissibility of hearsay in the IA reports even if it did apply. *See Lewis v. Velez,* 149 F.R.D. 474, 487 (S.D.N.Y. 1993) (Rule 803(8) "does not circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception"). The witness statements to IA constitute hearsay. And the opinions and findings of the BPD officers in IA, and ultimately the BPD Commissioner who endorsed the IA findings, are double hearsay as they are out-of-court statements based on hearsay from police witnesses' statements offered to prove that Hayes and the City did not discriminate or retaliate, and that Gavin engaged in improper conduct in her dealings with Hayes. Accordingly, these documents and any testimony seeking to introduce them (or their contents) must be excluded. *See id.*, at 489 (if police report consists solely of hearsay, then remaining findings are not admissible where they reflect primary issue or issues before jury).

2.   The IA reports and findings are not admissible pursuant to FRE 803(8).

Pursuant to Rule 803(8), investigative reports in which "factual findings" are made may be admissible, but only if trustworthy. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 167 (1988); *Lubanski v. Coleco Industries, Inc.,* 929 F.2d 42, 45 (1st Cir. 1991);[2] *Velez*, *supra,* at 487-489. Trustworthiness is measured based on at least four factors: 1) the timeliness of the investigation and report such that evidence is properly preserved; 2) the special skill or experience of the reporter; 3) whether a hearing with 'procedural safeguards' was provided to ensure the integrity of

---

[2] The *Beech Aircraft* and *Lubanski* decisions are distinguishable from the present case in that they do not concern a police investigation of the police's own misconduct, but rather investigations into a third party's conduct. Hence, the critical trustworthiness factor in determining admissibility was very different in those cases.

the findings; and (4) whether there exists 'reason to suspect bias' on the part of the reporter. *Velez*, *supra,* at 487-488.    The evaluation of these factors and the ultimate determination of trustworthiness is left to the sound discretion of the trial judge. *Beech Aircraft, supra,* at 167; *Velez*, *supra,* at 488.

Here, even if the IA reports were not based on inadmissible hearsay,[3] they would not be admissible because these 'trustworthiness' factors all weigh against admission of this IA evidence.

### a. The IA reports and findings are untrustworthy as biased because prepared in anticipation of litigation.

First, and most importantly, the IA evidence is not admissible because it is biased.  One of the primary and most common indicators of bias is whether the report was prepared in the context of civil litigation against the reporter or their employer. *Velez*, *supra,* at 488 ("By bias the courts and the Advisory Committee refer principally to reports compiled in anticipation of litigation."). Where a report is prepared in anticipation of litigation by one who has a reason to try to "exculpate himself or his employer," such a report lacks trustworthiness as there exists "strong motivation on the part of the defendants to try to clear themselves of wrongdoing."  *See Velez*, at 488, citing *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942), *aff'd*, 318 U.S. 109 (1943).   Where there is potential liability for police officers, the police department and the city which employs them, a police investigation report about alleged police misconduct is often deemed biased and, thus, inadmissible. *See Velez, supra,* at 489; *Kokoska v. City of Hartford,* 2014 WL 4724875, *4 (D. Conn. 2014) ("given the self-interest of the officers involved in the incident" and of their supervisor who wrote one of the reports, the police investigation reports of possible excessive force "excluded as untrustworthy"); *see also Gross v. King David Bistro, Inc.*, 84 F. Supp.2d 675, 678

---

[3]  As discussed above, this rule applies to non-hearsay factual findings. *See Velez, supra,* at 487.

(D. Md. 2000) (state health department report concerning cause of alleged bacterial poisoning of party attendees deemed "not trustworthy" and inadmissible because the investigators' conclusion was "primarily based on interviews with the party hosts" who "with the possibility of future litigation…were interested and biased witnesses"), citing *Faries v. Atlas Truck Body Mfg. Co.,* 797 F.2d 619 (8th Cir.1986) (holding that a police report that relied primarily on the account of an interested witness was inadmissible under Rule 803 because it was untrustworthy).

The IA investigation was commenced after Gavin filed her MCAD Complaint against the City and Hayes.  The IA reports and findings were completed nearly two years later, after Gavin had filed her Complaint in court.  The BPD Command Staff and IA officers were undoubtedly motivated to protect themselves and their reputations as a police department that does not discriminate or retaliate and to protect their employer, the City, from liability arising from Gavin's claims.  Because of this bias, the IA reports and findings are not trustworthy and should be excluded.

**b.  The IA reports and findings are untrustworthy because they are untimely.**

A second factor that courts consider in evaluating the admissibility of a police investigation report is timeliness.  *Velez, supra,* at 487.  Here, the reports with recommended findings were not finalized until January 30, 2018, and the final findings were not issued until July 2019 – nine months and two years, respectively, after Gavin filed her formal complaint against Hayes with the BPD.  There was no reason for such a long delay except for the strong likelihood that the BPD and City were affected by the pending litigation both at the MCAD and then in this Court.  The reports and findings have been used as a cudgel to pressure Gavin to resolve the litigation.  Notably, the BPD and City still have not issued any discipline to Gavin more than two year after the IA findings, indicating again that they are measuring their moves based on the impact on the litigation and their

potential liability.  *See* Docket No. 117-5, Affidavit of Donna Gavin, ¶ 6.  And Gavin would appeal the IA charges, but as stated in her previously filed Affidavit, she is unable to appeal until discipline is rendered. *Id.*  All of that underscores the untrustworthiness of the process and the result.

### c.  The lack of any hearing further undercuts the trustworthiness of the IA reports and findings.

Another factor that courts review to evaluate the trustworthiness of a governmental investigative report is whether the government conducted a hearing with appropriate 'procedural safeguards' to ensure the integrity of the report and its findings.  *See Velez, supra,* at 488.  Here, the BPD and City did not provide a hearing, which means the IA report and findings were produced without any meaningful cross-examination and the ultimate decision-maker – the BPD Commissioner -- never heard directly from the witnesses, but instead merely relied on the written report of "findings" from a junior officer.

### d.  The police agents who conducted the investigation and prepared the report and findings do not have any known special skills or experience regarding discrimination and retaliation claims, and the IA is not even trusted by the Mayor's own Police Reform Task Force.

The fourth factor that courts consider in evaluating the trustworthiness of a governmental investigative report is whether the reporter has any special skills or experience relevant to the issue under investigation.  *See Velez, supra,* at 487.  The issues here are whether Hayes discriminated, created a hostile work environment and retaliated against Gavin.  None of the IA officers who prepared the reports and findings have any known skill or experience in assessing such issues. Indeed, Mayor Walsh's own Boston Police Reform Task Force concluded that the BPD is not equipped to investigate allegations of disparate treatment of its own officers.  *See* Task Force Reform Report (attached hereto at Exhibit A), Recommendations 1.01 (a-d) and 1.02 (c), at pp. 1,

3-5 (recommending creation of new Office of Police Accountability and Transparency with enhanced supervisor and oversight power, including subpoena power to call witnesses and compel production of documents, to review and, if appropriate, reject IA findings, with particular focus on disparate treatment of officers including in IA discipline matters).  The City's own Reform Task Force doubts the trustworthiness of IA disciplinary proceedings, especially when they involve allegations of discrimination.[4]

In sum, the IA reports and findings are demonstrably untrustworthy based on the four factors courts typically use to evaluate the admissibility of an investigative report pursuant to Rule 803(8).  Therefore, the Court should find that the IA reports and findings are not admissible pursuant to that Rule.

   3.  The IA reports and findings are also not admissible as 'business records.'

Finally, the IA reports and findings are not admissible as 'business records' pursuant to FRE 803(6).  Police investigative reports and other investigative reports where the business is motivated to skew the report to protect itself from liability do not constitute 'business records.' *See Velez, supra,* at 486, citing *Bracey v. Herringa*, 466 F.2d 702, 704 & n.4 (7ᵗʰ Cir. 1972) (corrections officers' reports of prisoner beatings do not fit Rule 803(6) exception).  The Supreme Court, in *Palmer v. Hoffman*, excluded records of a railroad accident that were prepared by railroad personnel.  318 U.S. 109, 113 (1943).  As the Supreme Court reasoned, an accident report is not "typical of entries made systematically or as a matter of routine to record events….[T]he fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course of the business…." *Id.,* at 113.  As discussed by the Court in *Velez,* the Supreme Court "noted that such an expansive

---

[4]  Numerous pages of the IA reports are also redacted rendering them even more untrustworthy.

interpretation of 'business records' would result in the admission of self-serving records of any incident for which an organization could foresee liability, as long as the records were made pursuant to some sort of regular recording system."  *Velez, supra,* at 486, discussing *Palmer v. Hoffman*, 318 U.S. at 113-114.  "Furthermore, hearsay is not admissible under Rule 803(6) where the reliability of the materials in question is undermined."  *See id.*  As discussed previously, the reliability of the IA reports and findings is very much in doubt.  Therefore, the Court should not admit these records as 'business records.'

## CONCLUSION

For these reasons, the Court should allow Plaintiff Donna Gavin's motion *in limine* to exclude the IA reports and findings offered by Defendants as exhibits and should bar any witness from testifying about such reports and findings or any subsequent discipline that the City and BPD may now seek to impose on Gavin on the eve of or during trial.

Respectfully submitted,

**DONNA GAVIN**

By her attorneys,

*/s/ Nicholas Carter*
Nicholas B. Carter (BBO#561147)
*ncarter@toddweld.com*
Lucia A. Passanisi (BBO#691189)
*lpassanisi@toddweld.com*
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Dated: September 24, 2021            Tel: (617) 720-2626

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)</u>

Undersigned counsel hereby certifies that counsel for Plaintiff, Donna Gavin, and counsel for Defendants, City of Boston and Mark Hayes, have conferred on September 23, 2021, to resolve the issues presented in this Motion.  Opposing counsel have indicated that they will not assent to the relief Plaintiff is seeking in this Motion.

<u>*/s/ Nicholas Carter*</u>
Nicholas B. Carter, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2021, a copy of the foregoing was served upon counsel of record through the Court's e-filing system.

<u>*/s/ Nicholas Carter*</u>
Nicholas B. Carter, Esq.