UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONNA GAVIN </br></br> Plaintiff, </br></br> v. </br></br> CITY OF BOSTON and MARK HAYES </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) C. A. No. 1:18-cv-10819-LTS </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

**PLAINTIFF DONNA GAVIN'S OPPOSITION TO
DEFENDANT CITY OF BOSTON'S MOTION *IN LIMINE* TO EXCLUDE
ANY EVIDENCE OF BOSTON POLICING PRACTICES AND PROCEDURES**

Plaintiff Donna Gavin ("Gavin") hereby opposes Defendant the City of Boston's ("City") motion *in limine* to preclude any evidence of Boston policing practices and procedures and to preclude "reptilian tactics" (Docket No. 155).  Evidence of Mark Hayes ("Hayes") and the City's[1] inappropriate police practices in terms of their treatment of Gavin is very much relevant to this gender discrimination and retaliation case, as discussed at length in Gavin's oppositions to the City's and Hayes' motions *in limine* to exclude the testimony of Gavin's police practices experts, Chief Norman Stamper, Ph.D., ("Stamper") and Thomas Stack ("Stack").  S*ee* Docket Nos. 158 (opposition to motion to exclude Stamper) and 160 (opposition to motion to exclude Stack).  The jury will not be familiar with what constitutes proper police practices, especially management and supervisory practices and current practices in human trafficking investigations.  Gavin should be allowed to introduce such evidence, through her experts, herself and others, to demonstrate that

---

[1] Hayes and the City are referred to collectively as "Defendants."

1

Defendants' treatment of her was improper and not consistent with proper police practices. This evidence is necessary to rebut Defendants' likely testimony that their treatment of Gavin was appropriate and to prove that their conduct was motivated instead by discriminatory and retaliatory animus.

Contrary to the City's contention, Gavin is not seeking to cause fear in the community about the Boston Police Department's ("BPD") practices and procedures (so-called "reptilian tactics"), though the community should be concerned about how a male-dominated police department mistreated a talented and dedicated female commander and their efforts to drive her out of the BPD.

Gavin's evidence will be focused instead on what happened to her which will include evidence of how her male colleagues were treated more favorably and how Defendants' treatment of her cannot be rationalized by Defendants' argument that their conduct constituted good police practices. By way of example only, Gavin will demonstrate in her case that:

- It is not good police personnel practice for a Captain Detective to keep a secret log on his female Lieutenant Detective where he documents her alleged improper conduct in an effort ultimately to seek to have her terminated from the BPD or, at minimum, driven out of the elite detectives' bureau. He did not keep a log on her male colleagues.
- It is not good police practice for a Captain Detective to conduct a secret audit of his Lieutenant Detective's files, informing her subordinate, but not her. He did not conduct secret audits of his male subordinates.
- It is not good police practice for a Captain Detective to repeatedly force personnel on his female Lieutenant Detective when he knows she objects to the particular personnel

changes and offers a reasonable compromise. He did not force such personnel changes on his male subordinates.

- It is not good police practice for a Captain Detective to keep a joint federal-city human trafficking investigation from the female commander of the Human Trafficking Unit, while informing some of her subordinates in that unit and authorizing their participation in the investigation.

- It is not good police practice for a Captain Detective to speak negatively about his Lieutenant Detective in communications with her subordinates, including especially when such communications are behind her back.

- It is not good police practice for a Lieutenant Detective who is in charge of two specialized units not to have a private office to conduct business that sometimes requires confidential communications, especially when her male colleagues are provided private offices and a private office could be and was easily created in the end after she was forced to repeatedly complain.

- It is not good police practice in the area of human trafficking investigations to insist on a "Top 10 List" of human traffickers to target when traffickers are transient and, therefore, such a list is not really possible or effective because it will change from day to day as traffickers move in and out of Boston and Massachusetts to evade detection.

- It is not good police practice in the area of human trafficking investigations to elevate a junior male detective with no human trafficking investigative experience and who has not even taken the mandatory sexual assault investigation training to a stature in the Human Trafficking Unit where the female commander is virtually prohibited from supervising or training him lest she be accused of "harassing" him.

Without evidence that these actions are inconsistent with good police practices, the jury might be wrongly led to believe that the actions of Hayes and the BPD Commanders above him were appropriate simply because they had the discretion to conduct themselves as they did due to the so-called "chain of command." By proving these actions were not consistent with good police practices, Gavin will be able to expose the true animus for these actions, which was quite simply gender discrimination and then retaliation against a woman who complains about it.

The three cases that the City cites are not relevant here as they concern the appropriateness of certain closing arguments that appeal to community emotion and fear. *See Smith v. K-Mart* 177 F.3d 19 (1st Cir. 1999); *Fitzpatrick v. Wendy's Old Fashioned Hamburgers of New York, Inc.,* 487 Mass. 507 (2021); *Doty v. Sewall,* 908 F.2d 1053 (1st Cir. 1990). However, in two of the three cases cited the closing argument was either deemed appropriate because it was tied to the evidence, as in *Doty*, *supra* at 1059, or harmless, as in *Smith, supra* at 27-28. In any event, what constitutes appropriate closing argument is for another day. These cases do not address the issue before the parties here: what evidence should be allowed at trial.[2]

## CONCLUSION

For these reasons, the Court should deny the City's motion *in limine* to exclude evidence and argument concerning Boston policing practices and procedures.

---

[2] In *Doty*, *supra*, at 1058-1059, the First Circuit also affirmed the trial court allowing what was considered emotional evidence about the plaintiff's experience in the Vietnam War because it was relevant to the issues in the case. The evidence Gavin will introduce will also be relevant to the issues in the case.

Respectfully submitted,

**DONNA GAVIN**

By her attorneys,

*/s/ Nicholas B. Carter*
Nicholas B. Carter (BBO#561147)
Lucia A. Passanisi (BBO#691189)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
ncarter@toddweld.com
lpassanisi@toddweld.com

Date: October 7, 2021

### CERTIFICATE OF SERVICE

I, Nicholas B. Carter, hereby certify that the foregoing document was filed through the Court's electronic filing system and accordingly served on all counsel of record.

*/s/ Nicholas B. Carter*