UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONNA GAVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON and MARK HAYES, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 18-10819-LTS

CHARGE TO THE JURY

November 15, 2021

Members of the jury:

Now that you have heard the closing arguments, I will instruct you on the law.  You will then begin your deliberations.  My instructions will be in three parts: first, I will instruct you on the general rules that define and control the duties of a jury in a civil case; second, I will explain the rules of law that you must apply to answer the questions presented to you on the jury slip; and, finally, I have some brief guidelines that will govern the conduct of your deliberations.

As you deliberate, you will have these instructions in written form.  But even though you will have them in the jury room with you, you should nevertheless listen very carefully to all of the instructions as I give them to you now.

**General Rules**

In defining the duties of the jury, let me first explain the general rules.

It is your duty to find the facts from all of the evidence in the case.  I will describe the law to you, and you must apply the law to the facts as you find them.  You must follow the law as I describe it, whether or not you personally agree with the wisdom of the law.  This instruction is a fundamental part of our system of government by law, rather than by the individual views of the judge and jury.  It is your duty as jurors to decide the case fairly and impartially, regardless of any personal likes or dislikes, opinions, prejudices, bias, or sympathy for one party or another. You must make your decision based solely on the evidence before you, and according to the law.

In following my instructions, you must follow all of them.  They are all equally important.  The lawyers are allowed to comment both on the evidence and on the rules of law in their opening and closing statements.  But if what they have said about the evidence differs from your memory, let your collective memory control.  If what they have said about the law seems to differ in any way from my instructions, you must be guided only by my instructions.  You must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return.  Whatever opinion I might have as to what your verdict should be is utterly irrelevant.  The verdict is yours, and yours alone, to render as the finders of the facts.  Although I intend to be as helpful as I can in providing you with the knowledge of the <u>law</u> that you will require to render an intelligent and informed verdict, the law commits this case to your sole determination as the judges of the <u>facts</u>.

"Plaintiff," you will recall, is the name we give to the person or entity who brings a lawsuit.  In this case, the Plaintiff is Donna Gavin.  We refer to the parties sued as the "Defendants."  In this case, the Defendants are the City of Boston and Mark Hayes.

In a civil case such as this, a plaintiff bears the burden of proving their case by a preponderance of the evidence.  As I explained earlier in my preliminary instructions, this is a

much lower standard of proof than that of "proof beyond a reasonable doubt," the very high standard that we apply in a criminal trial.  Ms. Gavin need not prove her case to any degree of mathematical certainty.  Rather, she must produce evidence which, when considered in light of all of the facts and evidence in the case, leads you to believe that her claims are more likely true than not.  If you find that Ms. Gavin meets this burden, your verdict must be for her.  Should she fail to meet this burden, your verdict must be for the Defendants.

In determining whether any fact at issue in the case has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and you may consider all exhibits received in evidence, regardless of who may have produced them.

Before I turn to the applicable principles of law, let me first briefly review for you what is and is not evidence in a civil case.

Evidence is presented at a trial in one of three ways:

First, through the sworn testimony of witnesses, on both direct and cross-examination;

Second, through physical objects, such as documents, photographs, and videotapes that are identified by a witness and admitted as exhibits during the trial; and,

Third, by stipulation—that is, by agreement between the parties that certain facts are true and need not be independently proven as such at trial.

Certain things are not evidence and should have no influence on your verdict:

1.  Arguments and statements by lawyers—as I have cautioned several times—are not evidence.  What the lawyers have said over the course of the trial you may find helpful, even persuasive, but the facts are to be determined from your own evaluation of the testimony of the

witnesses and exhibits, and from any reasonable inferences that you choose to draw from the facts as you find them.

2.   Questions to the witnesses are not evidence and may only be considered in the sense that they give context or meaning to a witness's answer.

3.   Objections to questions are not evidence.  Attorneys have a duty to their clients to object when they believe that a question is improper under the rules of evidence.  You should not be influenced by the fact that an objection was made.  If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact it might have contained.  If I overruled the objection, you should treat the witness's answer like any other.

4.   Testimony that I excluded, struck, or which I instructed you to disregard is not evidence.  If you heard an answer to the question before my ruling sustaining an objection, you are to disregard it—that answer is not evidence.  You should also ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the testimony of witnesses.  Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.

5.   Notes, if you have kept them, are not evidence.  They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

6.   Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence.

<u>Direct and Circumstantial Evidence</u>

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of a witness that the witness saw or did something. Circumstantial evidence is indirect evidence—that is, proof of a fact or facts from which you

could draw a reasonable inference that another fact exists, even though it has not been proven directly.

You all have experience in your everyday life drawing inferences based upon circumstantial evidence. For instance, imagine it was sunny when you arrived here this morning, but just now someone walked into the courtroom wearing a wet raincoat and carrying a dripping umbrella. Without any words being spoken, and without looking outside for yourself, you might draw the reasonable inference that it is now raining outside. In other words, the facts of the wet raincoat and the dripping umbrella would be circumstantial evidence that it is raining.

You are entitled to consider both direct and circumstantial evidence. Neither type of evidence is considered superior or inferior to the other. The law permits you to give equal weight to both; it is for you to decide how much weight to give to any piece of evidence.

Witness Credibility

Most evidence received at trial is offered through the testimony of witnesses. As the jury, you are the sole judges of the credibility of these witnesses. If there are inconsistencies in the testimony, it is your function to resolve any conflicts and to decide where the truth lies. You are not required to believe the testimony of any witness simply because that witness was under oath. You may choose to believe everything that a witness said, only part of it, or none of it. If you do not believe a witness's testimony that something happened, it simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

Often it may not be what a witness says, but how he or she says it that might give you a clue whether or not to accept their version of an event as believable. You may consider:

- a witness's character;

- their appearance and demeanor on the witness stand;

- their frankness or lack of frankness in testifying;

- whether the witness was contradicted by anything that they said before the trial;

- whether their testimony is reasonable or unreasonable, probable or improbable, in light of all the other evidence in the case;

- how good an opportunity the witness had to observe the facts about which they testify; and

- whether their memory seems accurate.

You may also consider the witness's motive for testifying, whether they display any bias in doing so, and whether they have any interest in the outcome of the case.  Simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth.  But a witness's interest in the case is a factor that you may consider along with everything else.  You may also consider the fact that a witness may be perfectly sincere in their account of an event and simply be mistaken as to the truth.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things, get confused, or remember an event differently.  Memory is not always reliable, and when someone recounts a story twice, it will seldom be identical in every detail, unless it is a memorized lie or the witness is possessed of extraordinary perception and recall.  It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods.  That may depend on whether important facts or small details are at issue, and how important the facts might have appeared to the witness at the time they were perceived.

The weight of the evidence does not necessarily depend on the number of witnesses testifying for one side or the other.  The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear

to have some knowledge of the matters in issue at this trial.  Nor does the law require any party

to produce as exhibits all papers and things mentioned by the witnesses in the case.  You must

determine the credibility of each witness who testified, and then reach a verdict based on all of

the believable evidence in the case.

Expert Witnesses

I would like to address briefly the testimony of experts.  The rules of evidence ordinarily

do not permit witnesses to express opinions or conclusions.  Normally, witnesses testify as to the

facts and the jury draws conclusions from that testimony.  An exception to this rule is testimony

from those we call "experts"—witnesses who, because of special training, education, skills, or

knowledge, have become expert in some art, science, profession, or calling.  Such persons may

state their opinions as to relevant and material matters in which they profess to be experts, and

they may state their reasons for their opinions.

In this case you heard expert opinions from Mr. Stack, Ms. Hassell, and Mr. Stamper.

You should consider the expert opinions received in evidence in this case, and give them as

much or little weight as you think they deserve.  An expert's opinion is subject to the same rules

concerning reliability as the testimony of any other witness.  You may also consider whether an

expert has been compensated.  Just because a person is testifying as an expert does not mean

you, the jury, have to accept that person's opinion.  A person may be learned in some profession,

but if you conclude that the reasons given in support of their opinion are not sound, or if you feel

that the expert's testimony is outweighed by other evidence, or if you find that the expert witness

is not believable or credible, you may give the opinion only so much weight, if any, as you think

it deserves.  Expert testimony must have a sound factual basis.  An expert's opinion amounting

to speculation unsupported by subordinate facts must be disregarded.  It is your responsibility, as

jurors, to determine what the facts are.  The fact that the Court has permitted an expert to testify should not be seen by you, the jury, as any indication of the weight, if any, that you should accord the expert testimony.

## Elements of the Claims

### General Instructions:

Now I will explain Ms. Gavin's claims of discrimination, hostile work environment, and retaliation brought under Massachusetts and federal law.  Lieutenant Detective Donna Gavin brings these claims against Captain Detective Mark Hayes, who supervised her for a period of time at the Boston Police Department, and against her employer, the City of Boston.  Ms. Gavin asserts that when she was promoted to Lieutenant in command of the Human Trafficking Unit and Crimes Against Children Unit, her direct supervisor, Mr. Hayes, began to discriminate against her and subject her to a hostile work environment because she is a woman.  In particular, Ms. Gavin claims that Mr. Hayes undermined her authority and her ability to run her units and that by doing so, his actions reflected his hostility and discriminatory treatment of her.  At some point, Ms. Gavin complained to Mr. Hayes and the Boston Police Department that he was discriminating against her and treating her in a hostile manner due to her gender.  She alleges that after she complained Mr. Hayes and the Boston Police Department retaliated against her.  Ms. Gavin was eventually transferred from her position as the Commander of the Human Trafficking Unit and Crimes Against Children Unit to a different position at the Boston Police Training Academy.  As a result of her allegations, she claims damages and seeks to recover for that harm.  Mr. Hayes and the City deny that they discriminated against her or created a hostile work environment because she is a woman.  They also deny retaliating against her.

You will decide Ms. Gavin's claims applying the law I explain to you to the facts you find.

**Liability:**

Before explaining Ms. Gavin's claims, I will explain something called vicarious liability. The City of Boston is not a human being, obviously.  It acts through the actions of its employees. The City of Boston, like any employer, is responsible for and liable for the conduct of its supervisors on whom the City of Boston confers authority.  Therefore, the City of Boston can be liable for the conduct engaged in by supervisors, whether or not it knew about the conduct and whether or not it had any opportunity to stop the conduct or take remedial action.  Here, Ms. Gavin alleges Mr. Hayes, Deputy Superintendent Ayala, Superintendent Long, and Commissioner Evans were such supervisors.  As a result, when you are asked to determine whether the City of Boston is liable for the claims I am about to explain, you consider the conduct engaged in by its supervisors.

I.      **Discrimination Claims (Federal and State Law):**

Ms. Gavin asserts a claim under Title VII, a federal law, and the Massachusetts anti-discrimination statute, a state law.  These laws prohibit employers from discriminating against employees in the terms and conditions of employment on the basis of the employee's gender.  This claim is only against the City of Boston.  Ms. Gavin claims the City of Boston discriminated against her because of her gender.  The City denies doing so.  Federal and Massachusetts law are similar, so I will explain it to you once and you will make one decision.

To recover on a claim of gender discrimination, Ms. Gavin must prove all of the following:

1) that she is a member of a protected class;

2) that she was subject to an adverse employment action;

3) that the employer bore "discriminatory animus" in taking that action; and

4) that the animus was the reason for the action, or causation.

Protected Class

As to the first element, there is no dispute that Ms. Gavin is a member of a protected class, i.e., she is a woman.

Adverse Action

As to the second element of adverse employment action, Ms. Gavin claims that, because she is a woman, the City of Boston, among other things, did not provide her with a private office for sixteen months while doing so for all males of equal rank, undermined her authority with subordinates, micromanaged her daily work, and ultimately transferred her to the Boston Police Training Academy.  You must decide whether any or all of these actions occurred and if so, whether one or more are adverse actions.

For Ms. Gavin to establish that she suffered an adverse employment action, she must prove to you by a fair preponderance of the evidence that she has been materially disadvantaged in respect to salary, grade, privilege, or other objective terms and conditions of employment.  An adverse action typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.  Mere change in position or specific responsibilities is not necessarily an adverse action.  When evaluating such a change, you may consider the nature of the change, the degree of the change—minor or significant, and whether an employee's experience or expertise remains useful or valuable.  That salary and benefits remain the same are relevant factors to consider, but they do not necessarily preclude a transfer from constituting an adverse action.

Material disadvantage for this purpose arises when objective aspects of the work environment are affected.  Moreover, while the subjective views of an employee are relevant in determining whether an action is adverse, an employee's feeling of stigmatization or punishment

does not by itself render an action adverse.  You must evaluate the actions objectively—that is, whether a reasonable person in the situation would view the actions as adverse.  There must be real harm; subjective feelings of disappointment and disillusionment will not suffice.  Workplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.  Personality conflicts with a supervisor and a supervisor's snubbing and nitpicking are not materially adverse employment actions.

Ms. Gavin satisfies this element if you unanimously find that she has proven by a preponderance of the evidence one, or more, adverse actions.

Motive, Intent, or State of Mind

If you find that the City of Boston undertook adverse actions with respect to Ms. Gavin, you must decide why it took those actions, i.e. whether Ms. Gavin has proven by a preponderance of the evidence that the City of Boston acted with "discriminatory animus."  This will require you to inquire into and determine the motive, intent, or state of mind of the City of Boston, through its supervisors.

Business Judgment

Ms. Gavin claims that the City undertook the adverse actions based on a motivation to discriminate against her because of her gender.  The City responds that its actions were done for nondiscriminatory reasons.

When assessing Ms. Gavin's claim of discrimination, you should focus on the motivations of the City of Boston and not the soundness of their judgment.  Although an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination.  The employer's stated legitimate

reason must be reasonably articulated and nondiscriminatory, but it does not have to be a reason that you, the jury, would act on or approve.  An employer's reasons for its action may be unsound or even absurd, but if they are neither discriminatory nor proven as pretext, the plaintiff cannot prevail.

You may consider the reasonableness or lack or reasonableness of the City of Boston's stated judgment along with all the other evidence in determining whether it discriminated against Ms. Gavin.  The reasonableness of the City's reasons may of course be probative of whether the reasons are pretexts.

<u>Motivating Factor</u>

Sometimes employment decisions are made based on a mixture of nondiscriminatory and discriminatory reasons.  The City of Boston discriminated against Ms. Gavin if she proves by a preponderance of the evidence that her gender was "a motivating factor" in the City's actions.

To prove that gender was a motivating factor in the City's actions, Ms. Gavin does <u>not</u> have to prove that her gender was the <u>only</u> reason for the adverse actions that you found.  It is enough if Ms. Gavin proves that her gender played a motivating part in the actions.  If Ms. Gavin's gender made a difference in the City of Boston's actions, you must find that it was a motivating factor in the decision.  However, if the City proves to you by a preponderance of evidence that it would have taken the adverse actions even without considering Ms. Gavin's gender, then gender was not a motivating force in its decision.  There is no x-ray into the motive, intent, or state of mind of anyone.  As the jury you must make this decision based upon the evidence presented at the trial.  You have both direct and circumstantial evidence to consider. The law makes no distinction between direct and circumstantial evidence. You decide the weight, if any, to give to each piece of evidence whether it is direct or circumstantial.

*Direct Evidence*

Sometimes motive, intent, or state of mind can be proved directly, however, direct evidence is not required. Direct evidence is evidence that, if believed, would result in a highly probable inference that a forbidden bias was present in the workplace. Examples of direct evidence include: clearly discriminatory employment policies, statements of a defendant that suggest a discriminatory attitude toward women; testimony of a witness describing what their state of mind was; or testimony of a witness about what a defendant said that would be reflective of state of mind.

*Circumstantial Evidence*

Motive, intent, or state of mind may be proved indirectly or circumstantially. You may examine a defendant's actions and words, and all of the surrounding circumstances, to help you determine their motive, intent, or state of mind in undertaking certain actions. You may draw reasonable inferences from the facts in evidence to determine motive, intent or state of mind. The inferences you draw need not be the only possible inferences to draw, but you must only draw reasonable inferences.

*Types of Circumstantial Evidence*

<u>Pretext</u>

Circumstantial evidence of discrimination can include proof that the reason or reasons given by a defendant for its actions are not true. This is sometimes called pretext. Examples of circumstantial evidence demonstrating pretext include: conflicting performance evaluations, stereotypical thinking by the employer or those in charge, and not following written procedures with regards to the adverse action taken. The "most probative" means of assessing discriminatory intent is by examining whether comparators—other employees who were similarly situated in

terms of performance, qualifications and conduct, but who were not within the protected class, here, men—were treated differently.  Other indications of pretext can support a conclusion that a proffered reason is pretextual, including an employer's "shifting explanation" for its adverse action.

In a situation where the legitimate reason or reasons advanced by the employer for taking an adverse action are rejected as not being the true reasons, one can reasonably conclude that the employer based its actions on an impermissible consideration.  When considering pretext, your focus must be on the defendant's state of mind, not on whether its reasoning was right or wrong or whether its business judgment was sound or unsound.

Evidence of pretext standing alone may, but need not, support an inference of unlawful discrimination.  Therefore, if Ms. Gavin has persuaded you that the City of Boston's reasons for its actions are false, you may, but are not required to, infer that the City is covering up a discriminatory intent, motive, or state of mind.

<u>Atmosphere</u>

You may also consider whether circumstantial evidence suggests a general atmosphere of discrimination at the place of employment.  Although evidence of a discriminatory atmosphere is not conclusive proof of discrimination, such evidence may be used to "add color" to the City of Boston's decision-making processes and the influences behind the actions taken with respect to Ms. Gavin.  Similarly, if you find general remarks were made suggesting bias, you may consider these remarks though you must always be mindful of the speaker, context, and circumstances of the remarks.

<u>Other Employment Decisions</u>

You may also consider other employment decisions made by the City of Boston Police Department.  Evidence that an employer, acting through its officials and managers, considered gender unlawfully in other employment matters can support a conclusion that the unlawful bias was a factor in this case.  Evidence that an employer, acting through its officials and managers, acted lawfully in other employment matters can support a conclusion that unlawful bias was not a factor in this case.  You may also consider the attitudes regarding gender of other persons with authority in the City of Boston Police Department in determining the motive, intent, or state of mind of the City regarding its allegedly adverse actions toward Ms. Gavin.

Unconscious Bias

Another type of circumstantial evidence you can consider is so-called unconscious bias. The law prohibits making employment decisions based upon stereotypical notions of gender, whether conscious or unconscious.  Stereotypical notions of gender occur when an employer categorizes people on the basis of broad generalizations about gender.  For example, in making a promotion decision for a job requiring leadership skills, the employer is free to make judgments based on leadership skills; however, an employer is not free to assume that a woman, because she is a woman, is less equipped to be a leader.

Attributable Bias

Yet another type of circumstantial evidence you may consider is attributable bias. Attributable bias can occur in different ways: when the actual decision maker was influenced by the advice of a person motivated by bias, or where there is a discriminatory atmosphere in the workplace.

Conclusion: Federal and State Law Claims of Discrimination

15

If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of the Discrimination Claim as it relates to the City of Boston, then you must answer "YES" to Question 1 on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 1.

## II.    Hostile Work Environment Claim (Federal and State Law)

Ms. Gavin asserts a hostile work environment claim under both Federal and Massachusetts anti-discrimination statutes.  These laws prohibit employers from subjecting employees to a hostile work environment on the basis of gender.  These claims are only against the City of Boston.  Ms. Gavin claims that the City of Boston perpetuated and maintained a hostile work environment and that this harassment was motivated by her gender.  The City denies doing so.

Federal and Massachusetts law are similar, so I will explain it to you once and you will make one decision.  To prevail on this claim, Ms. Gavin must prove all of the following by a preponderance of the evidence:

1)  she was subjected to harassment by the City of Boston;

2)  such harassment was not welcomed by her;

3)  the City's harassment was based on the fact that she is a woman;

4)  the harassment was so severe or pervasive that it materially altered the terms or conditions of her employment;

5)  a reasonable person in her position would find her work environment to be hostile or abusive;

6)  she believed her work environment to be hostile or abusive as a result of the City's harassment; and

7)  some basis for the City's liability has been established.

Elements One and Two

The first two elements call upon you to apply the common meaning of these words.

Harassment Based on Gender

As to the third element, you must decide whether the harassment was based on Ms. Gavin's gender, that is, whether she was harassed because she is a woman. Many different forms of offensive behavior may be included within the definition of gender-based harassment. For harassment to be based on gender it need not be an act motivated by sexual desire but rather the harassment must be gender-specific. Sexually-charged or salacious behavior . . . is not necessary to prove that a work environment is sufficiently hostile or abusive to a female employee to amount to discrimination on the basis of sex. However, the overtones of such behavior must be, at the very least, gender-based, so as to be recognizable as a form of sex discrimination. Incidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation—can in context contribute to or create a hostile work environment.

Severe or Pervasive Harassment

As to the fourth element, to determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms or conditions of Ms. Gavin's employment, you should consider the totality of the circumstances, including:

(a) how often the discriminatory conduct occurred;

(b) its severity;

(c) whether it was physically or psychologically threatening or humiliating; and

(d) whether it unreasonably interfered with Ms. Gavin's work performance.

A "material alteration" is a significant change in conditions. Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment. A hostile work environment will not result from occasional horseplay, offhand comments, simple teasing,

sporadic use of offensive language, or occasional jokes related to gender.  The law is not a general civility code.  As such, unpleasantness, rudeness, ostracism or isolated incidents (unless extremely serious) are not enough to support a hostile work environment claim.  But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms or conditions of employment.

### Objective and Subjective Beliefs

The fifth and sixth elements of this claim require Ms. Gavin to prove both that she personally believed her work environment to be hostile or abusive and that a reasonable person in her position would also find her work environment to be hostile or abusive.

### Basis for Liability

As to the seventh element, Ms. Gavin must establish some basis for the City's liability. Apply the principles I previously explained to you regarding vicarious liability, arising from the conduct by the City's supervisors to determine whether the City is liable for the hostile work environment, if you find such an environment established.

### Conclusion: Federal and State Law Claims of Hostile Work Environment

If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of the Hostile Work Environment Claim as it relates to the City of Boston, then you must answer "YES" to Question 2 on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 2.

## III.    Interference With Right to be Free from Discrimination (State Law)

Ms. Gavin asserts another claim under the Massachusetts anti-discrimination statute.  This law makes it unlawful for any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by the statute.  Interference

with a right includes the right to be free from discrimination in the terms, conditions, and privileges of employment and a hostile work environment.  This claim is only against Mr. Hayes.  Ms. Gavin claims that Mr. Hayes interfered with her right to be free from discrimination.  Mr. Hayes denies doing so.

To prevail on this claim, Ms. Gavin must prove the following by a preponderance of the evidence:

1)  Mr. Hayes, based on gender, discriminated against her or perpetuated and maintained a hostile work environment; and

2)  Mr. Hayes interfered with her rights in deliberate disregard of those rights.

Discrimination or Hostile Work Environment

Ms. Gavin may prove the first element by a preponderance of the evidence by proving that Mr. Hayes discriminated against her based on her gender or perpetuated and maintained a hostile work environment based on her gender, or both.  For Ms. Gavin to prove discrimination, apply the legal principles for discrimination as I have described them above in Section I.  For Ms. Gavin to prove hostile work environment, apply the legal principles for hostile work environment as I have described them above in Section II.  Note, however, that Mr. Hayes can be liable only for his own individual words and actions.

Deliberate Disregard

As to the second element, Ms. Gavin must prove by a preponderance of the evidence that Mr. Hayes knew of her right to be free from discrimination on the basis of gender and that he had an intent to interfere with that right.

<u>Conclusion: State Law Claim of Interference with Right to be Free from Discrimination</u>

If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of her Massachusetts Interference Claim as it relates to Mr. Hayes, then you must answer "YES" to Question 3 on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 3.

## IV.     Retaliation Claim (Federal Law)

Ms. Gavin asserts a retaliation claim under Title VII, a federal law. This law prohibits employers from retaliating against employees for engaging in "protected activity," that which is undertaken "to protest or oppose statutorily prohibited discrimination."   The City of Boston is the only Defendant in this claim.  Ms. Gavin claims she engaged in protected conduct when she asserted she complained of discrimination internally, when she filed a complaint with the Boston Police Department, when she filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), and when she filed this lawsuit.  She further claims that the City of Boston retaliated against her because she filed these complaints.  The City denies that it retaliated against Ms. Gavin for filing these complaints.

To prevail on this claim, Ms. Gavin must prove all of the following by a preponderance of the evidence:

1)  Ms. Gavin engaged in protected activity;

2)  Ms. Gavin was subjected to an adverse action;

3)  there was a causal connection between the City's alleged retaliation and Ms. Gavin's protected activity.

Ms. Gavin need not prove discrimination, and you may find retaliation even if there was no discrimination.

Protected Activity

As to the first element, the term 'protected conduct' refers to action taken to protest or oppose statutorily prohibited discrimination.  Protected conduct includes making complaints of discrimination or hostile work environment.  Ms. Gavin need not prove the merits of her complaints, but only that she was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of her gender was violated.

By engaging in protected activity, however, a plaintiff is not thereby clothed with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates, supervisors, or coworkers.  The law does not foreclose the employer from exercising its business judgment simply because doing so may negatively affect an employee who has asserted legally protected rights.

Adverse Action

As to the second element, apply the legal principles for adverse action as I have described them above in Section I.  The term "materially adverse" means that Ms. Gavin must show that the adverse action(s) she alleges was serious enough that it well might discourage a reasonable worker from complaining about discrimination.

Ms. Gavin claims three adverse actions for the purposes of this retaliation claim: 1) Hayes's filing of the Internal Affairs complaint, 2) the creation and perpetuation of a hostile work environment, and 3) transfer to the Boston Police Training Academy.  You must decide as to each whether Ms. Gavin has proven the action occurred, and if so, whether it was adverse.

But-For Causation

As to the third element, you must decide whether Ms. Gavin's protected activity was a but-for cause for the adverse actions you find.  To prove that Ms. Gavin's protected activity was a but-

for cause, Ms. Gavin does not have to prove that her protected activity was the <u>only</u> reason for the adverse action(s).  It is enough if Ms. Gavin proves that if not for her protected activity, the alleged retaliatory actions would not have occurred.

      <u>Conclusion: Federal Law Claim of Retaliation</u>

      If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of the Federal Law Retaliation Claim as it relates to the City of Boston, then you must answer "YES" to Question 4 on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 4.

## V.      Retaliation (State Law)

      Ms. Gavin alleges a Massachusetts Law retaliation claim against both the City of Boston and Mr. Hayes.  Massachusetts retaliation law differs somewhat from federal law, so I explain it separately.

      Here, as in every claim, the City of Boston is responsible for the conduct of its supervisors.  Mr. Hayes is responsible only for his own conduct.  You must evaluate this claim separately as to each defendant.

      Ms. Gavin must establish by a preponderance of the evidence that:

1) she reasonably and in good faith believed that the Defendant you are considering was engaged in wrongful discrimination;

2) she acted reasonably in response to that belief in opposing this Defendant's practice;

3) this Defendant took adverse action against Ms. Gavin; and

4) this Defendant had a forbidden motive for the adverse action, i.e., the action was a response to Gavin's protected activity.

Reasonable and Good Faith Belief

As to the first element, Ms. Gavin need not prove discrimination, and you may find retaliation even if there was no discrimination.  Ms. Gavin must only prove by a preponderance of the evidence that she reasonably and in good faith believed that the defendant engaged in wrongful discrimination.

Acting Reasonably in Response

As to the second element, Ms. Gavin acted reasonably in response to a good faith belief that the defendant was engaged in wrongful discrimination if she engaged in protected activity, such as by making complaints of discrimination.  Apply the legal principles for protected activity as I have explained them to you previously.

Adverse Action

As to the third element, apply the legal principles for adverse action as I have explained them to you previously under the Federal Retaliation Claim in Section IV.

Causation

As to the fourth element, under Massachusetts law Ms. Gavin bears the burden to prove by a preponderance of the evidence that retaliation was the "determinative cause" of the adverse action(s).  Retaliation based on her protected activity, was "determinative" if it was a material and important reason for the adverse action(s).  Ms. Gavin need not prove to you that her protected activity was the sole reason for the adverse actions, rather she bears the burden to prove that her protected activity was determinative of the actions.

Conclusion: State Law Claim of Retaliation

Question 5 has two parts, one for each Defendant.

If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of the Massachusetts Law Retaliation claim against the City of Boston, then you must answer "YES" to Question 5A on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 5A.

If you find Ms. Gavin has proven by a preponderance of the evidence each of the elements of the Massachusetts Law Retaliation claim against Mr. Hayes, then you must answer "YES" to Question 5B on the Special Verdict Form.  Otherwise, you must answer "NO" to Question 5B.

**Damages:**

If you answered "Yes" to one or more of Questions 1, 2, 3, 4, 5A, or 5B, then you must determine the amount of damages, if any, to fairly compensate Ms. Gavin.  If you answered "No" to all of the preceding questions (Questions 1-5), then you will not consider damages at all.

The fact that I am instructing you on damages does not mean that I am attempting in any way to suggest to you what your verdict should be.  Any suggestions from any of the lawyers in this case during opening or closing statements as to the value of this case or the amount of damages you should award is not evidence and is not binding upon you in any way.  If you award damages, you should do so in accordance with my instructions and based upon your determination of an appropriate damage award.

You should award to Ms. Gavin a sum of money that you believe will fairly and justly compensate her for the losses that you believe she actually sustained because of the unlawful discrimination.  This type of damages is called compensatory damages.  The object, as best as money can accomplish it, is to make the plaintiff whole for all the losses that she has suffered because of the defendant's unlawful discrimination.

There is no special formula for assessing damages.  It is your obligation to determine what is fair, adequate, and just.  You must be guided by your common sense and your conscience in translating into dollars and cents that amount which will fairly and reasonably compensate Ms. Gavin.

Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant.  You should not base you award on speculation, but only award for losses Ms. Gavin has proven.

Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages. The award is acceptable as long as it is based on just and reasonable inferences from the evidence.

In assessing damages, you must not consider attorneys' fees or the costs of litigating this civil case.  Attorneys' fees and costs of this case, if relevant at all, are for the Court and not the jury to determine.  Therefore, attorneys' fees and costs for this action should play no part in your calculation of any damages.   You should not consider an individual defendant's ability to pay any award that you make.

Ms. Gavin seeks several types of compensatory damages.  Ms. Gavin seeks emotional distress damages.  You may award her reasonable damages for her emotional distress if you find it.  Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination.

When considering emotional distress awards, evidence in the form of some physical manifestation of the emotional distress, or evidence in the form of expert testimony, although beneficial, is not necessary to awarding damages.  An award must rest on substantial evidence and its factual basis must be made clear on the record.

Some factors that you should consider include, but are not limited to:

1) the nature and character of the alleged harm;

2) the severity of the harm;

3) the length of time the Ms. Gavin has suffered and reasonably expects to suffer; and

4) whether Ms. Gavin has attempted to mitigate the harm (e.g., by counseling or by taking medication).

Ms. Gavin is not entitled to compensation for any emotional distress or related symptoms which preexisted Defendants' actions.  However, she is entitled to compensation for the full emotional distress you find the Defendants caused her, even if it is greater than what a reasonable person in her position would suffer, including exacerbation of preexisting symptoms.

Ms. Gavin seeks compensation for damage to her personal and professional reputation and standing.

Ms. Gavin must show a sufficient causal connection between the unlawful actions you found and the emotional distress and reputation damages she seeks.

Question 6A asks whether Ms. Gavin has proven by the preponderance of the evidence emotional distress and/or reputation damages and, if you answer "YES", then Question 6B asks the amount of such damages you award.  Do not include lost overtime, lost sick time, lost vacation, or lost promotion damages, all of which are described below, within this amount.

Next, Ms. Gavin seeks damages for lost overtime, lost sick time, and lost vacation time. You may award her compensatory damages for these amounts, if any, if proven by a preponderance of the evidence by Ms. Gavin.  Ms. Gavin must show a sufficient causal connection between the unlawful actions you found and the lost overtime, sick time, and vacation time she seeks.

Question 7A asks whether Ms. Gavin has proven by the preponderance of the evidence lost overtime, lost sick time, and/or lost vacation time damages and, if you answer "YES", then Question 7B asks the amount of such damages you award.  Do not include in this amount any damages you have included in Question 6 or any lost promotion damages described below and covered in Question 8.

Finally, Ms. Gavin seeks damages for the failure to promote her to the Command Staff. If you determine that the unlawful actions you found caused Ms. Gavin not to be promoted to the command staff then you may award her damages for this "lost promotion."  You cannot speculate in awarding these damages; rather, the determination of the amount of the award must be proven with reasonable certainty.

If you award these damages, then you should make reasonable estimates based on the evidence concerning the amount of future earnings that Ms. Gavin would have received had the defendants not discriminated against her.

In determining these damages, you should consider and weigh the following factors:

1) the specific position on the Command Staff she probably would have obtained (Deputy Superintendent or Superintendent) as well as when she probably would have received it;

2) the amount of earnings that Ms. Gavin probably would have received between now and her projected retirement date from that position minus the amount of earnings Ms. Gavin probably would receive from her present position (including all overtime pay) during that same period;

3) Ms. Gavin's probable date of retirement;

4) the difference between the earnings she probably would have received on the Command Staff and the earnings she probably would have received from her present position; and

5) the difference between the pension she probably would have received from retirement from the Command Staff and the pension she probably would have received from retirement from her present position.

Ms. Gavin must show a sufficient causal connection between the unlawful actions you found and the "lost promotion" damages she seeks.  Ms. Gavin bears the burden to prove by a preponderance of the evidence that she would have been promoted to the Command Staff and the amount of her damages.  As with all determinations you must make, you may draw reasonable inferences from the evidence, but you may not speculate.

If you award these "lost promotion" damages to Ms. Gavin, keep in mind that she cannot be awarded damages that overcompensate for the losses that she suffered because of the unlawful conduct.  To avoid overpaying Ms. Gavin, you must consider that the amount of money you give her today for future losses can be put in the bank or invested, where it can earn interest or other returns.  So, in making an award for future damages, you must reduce this amount to reflect its present value.  You must determine the amount of money that, if invested today at a reasonable rate of interest or other return, would in the future provide Ms. Gavin with the amount of money that you calculated she will lose in the future as a result of the Defendants' conduct.  This is calculated by reducing front pay damages to their present value.

Question 8A asks whether Ms. Gavin has proven by the preponderance of the evidence lost promotion damages and, if you answer "YES", then Question 8B asks the amount of such damages you award.  Do not include here any damages for emotional distress, reputation, lost overtime, sick time, or vacation.

**Deliberations**

It is now time for you to start your deliberations.  Let me say a few words about those deliberations.

Each of you brings to your jury service your life experiences and knowledge.  This serves only as background for your common sense and judgment.  In rendering your verdict you must consider only, and decide the case solely upon, the evidence you heard in court in light of my instructions.

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence and listening to the views of your fellow jurors.  Do not be afraid to change your opinion if you think that you are wrong after hearing the opinions of your fellow jurors.  But do not come to a decision simply because other jurors insist that it is right, and do not surrender an honest belief about the weight and effect of the evidence simply in order to reach a verdict.

This case has taken a great deal of time and effort to prepare and try.  There is no reason to think that it could have been better tried, or that another jury would be better qualified than you are to decide it.  It is important therefore that you reach a verdict if you can do so conscientiously.  Your verdict must be unanimous as to each of the special questions I am going to ask you to answer.  Your answers will be recorded on the verdict slip by your foreperson.  The fact that one of you is foreperson does not give that person special status in your deliberations.  You are all equal.

Your first order of business will be to select a foreperson.  The foreperson will have the same voice and the same vote as the other deliberating jurors.  The foreperson will act as the moderator of the discussion and will serve as the jury's spokesperson.  The foreperson's most

important obligation is to ensure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors.  When the jury has reached a verdict, the foreperson will fill in the appropriate answers, sign and date the verdict slip, and inform the court officer that the jury is ready to return to the courtroom.

Whenever you need a recess for any purpose, your foreperson may declare a recess.  Do not discuss the case during a recess.  All your discussions of the case should occur only when you are all together and your foreperson has indicated that deliberations may proceed.  If it becomes necessary during your deliberations to communicate with me, you may do so by sending a note through the court officer.  The note must be signed by your foreperson.  No member of the jury should ever attempt to communicate with me, except by such a signed writing.  However, in doing so do not tell me how you stand, either numerically or otherwise, on any issue before you, until after you have reached a verdict.  On matters touching simply on the arrangements for your meals, schedule, and convenience, you are free to communicate with the court officer orally rather than in writing.  You are not to communicate with anyone but me about the case, however, and then only in writing.

When you have reached your verdict, your foreperson should fill in, date, and sign the verdict slip to state the verdict upon which you all agree.  You will then return with your verdict to the courtroom.  Your verdict must be unanimous.  That is, you must be unanimous as to the answer to each of the questions you answer on the verdict form.

You may now go to the jury room and commence your deliberations.